**Robert E. CURRY, Plaintiff,**

v.

**SECRETARY OF the ARMY and the United States of America, Defendants.**

Civ. A. No. 77–717.

United States District Court, District of Columbia.

Oct. 31, 1977.

J. Francis Pohlhaus, NAACP, Washington, D. C., for plaintiff.

William H. Briggs, Jr., Asst. U. S. Atty., Washington, D. C., for defendants.

MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

By collateral attack on his military conviction plaintiff brings this test case to have aspects of the entire military justice system declared unconstitutional and to receive consequent injunctive and monetary relief. The matter was fully briefed and argued on cross-motions for summary judgment. No

material facts are in dispute. Jurisdiction is properly invoked pursuant to 28 U.S.C. §§ 1331, 2201–2202 (1970 & Supp. V 1975), and collateral review is authorized by *Schlesinger v. Councilman,* 420 U.S. 738, 746–48, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

On March 8, 1975, while serving in Germany as an enlisted man in the United States Army, plaintiff was convicted of two homicides by a general court martial. His conviction was approved by the military convening authority and affirmed by the Army Court of Military Review. The United States Court of Military Appeals declined review, and a further request for relief from the Board of Correction of Military Errors was also denied.

Plaintiff makes no claim of specific prejudice in the military proceedings against him. Rather, he seeks a declaration that those provisions of the Uniform Code of Military Justice ("Code"), 10 U.S.C. §§ 801–940 (1970), that assign multiple roles to the convening authority in the initiation, prosecution, and review of courts martial so destroy any chance that any defendant has of receiving a fair, impartial trial as guaranteed by the Fifth Amendment that they are facially unconstitutional. Plaintiff has failed adequately to sustain his burden. Defendants' motion for summary judgment is granted, and plaintiff's motion is denied.

The provisions of the Code under attack can be briefly summarized. Article 22, 10 U.S.C. § 822 (1970), establishes a convening authority for a general court martial. Often it is the commanding officer of some if not all the persons involved in the court martial. Under Article 34, *id.* § 834, the convening authority reviews the report of investigation, determines whether charges are warranted, and if so, refers them to the court martial for trial. Articles 25–27, *id.* §§ 825–827, designate the convening authority as the person who details members of the court martial, the military judge, and both prosecution and defense counsel. Ar-

ticles 60 and 64, *id.* §§ 860, 864, provide that the record of the court martial shall be forwarded to the convening authority for his approval or disapproval of a verdict of guilt on review of the law and facts. Article 62, *id.* § 862, permits him to reinstate a specification if it was dismissed by the trial judge in a case not resulting in a verdict of not guilty.

Plaintiff argues that these provisions in effect place the convening authority in the position of grand jury, selector of the trial judge, jury, counsel, and appellate court. The opportunities thus presented for improper command influence, whether exercised or not, are said to be so great that the system is inherently prejudicial to defendants.

Plaintiff's claim raises an issue of constitutional proportions, despite his failure to demonstrate specific prejudice.[1] In a civilian context such a scheme would clearly violate the Fifth Amendment, as several decisions of the Supreme Court suggest. *Compare In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) *and Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) *with Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Indeed such a system is so foreign to our concept of criminal due process in the civilian context that the question of its validity has never been squarely presented.

The question here, however, is whether under the Constitution it can be tolerated in a military as opposed to civilian context. The military, even in peacetime, has been given certain special prerogatives. Recent decisions of the Supreme Court and the United States Court of Appeals for the District of Columbia Circuit have demonstrated just how narrowly the Bill of Rights casts its protection to those in the military. *E. g., Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed. 556 (1975); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41

---

1. Plaintiff need not demonstrate that he has been "necessarily prejudiced in fact," but only that he has been "exposed to a reasonable possibility of prejudice in fact." *McGill v.*

*United States,* 121 U.S.App.D.C. 179, 348 F.2d 791, 793 (1965). *See Avery v. Georgia,* 345 U.S. 559 (1953). This showing has been made.

L.Ed.2d 439 (1973); *Committee for G. I. Rights v. Callaway,* 171 U.S.App.D.C. 73, 518 F.2d 466 (1975). Although numerous authorities, both within and without the military, have noted the unfairness of the system under attack in this suit,[2] Congress has periodically considered pleas for reform and has rejected them.[3] Moreover, both the Court of Claims and the Army Court of Military Review have denied claims identical to the one at bar. *McDonald v. United States,* 531 F.2d 490, 209 Ct.Cl. 62 (1976); *Gross v. United States,* 531 F.2d 482, 209 Ct.Cl. 70 (1976); *United States v. White,* 50 C.M.R. 77 (A.C.M.R.1975).

It must be recognized that the Code itself contains explicit provisions designed to safeguard against improper command influence in court martial proceedings. For example, Article 37, 10 U.S.C. § 837 (1970), provides in part:

(a) No authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercise of its or his functions in the conduct of the proceeding. No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts. . . .

(b) In the preparation of an effectiveness, fitness, or efficiency report, or any other report or document used in whole or in part for the purpose of determining whether a member of the armed forces is qualified to be advanced, in grade, or in determining the assignment or transfer of a member of the armed forces or in determining whether a member of the armed forces should be retained on active duty, no person subject to this chapter may, in preparing any such report (1) consider or evaluate the performance of duty of any such member as a member of a court-martial, or (2) give a less favorable rating or evaluation of any member of the armed forces because of the zeal with which such member, as counsel, represented any accused before a court-martial.

In addition a long list of military cases condemn instances of improper command influence.

Plaintiff urges that the persistence of indications of such influence proves the inadequacy of the system in spite of its safeguards. He argues that there is no satisfactory way to counteract the imperceptible prejudice that necessarily pervades a system over which the commanding officer has so much authority. To be sure, the knowledge that one's commanding officer has, in essence, already found probable cause to exist and is watching over the proceedings may prey on the minds of those appointed by him to conduct the court martial. If bias results it may on occasion be too evanescent to discover on a case-by-case basis.

This does not, however, provide grounds for a judicial declaration invalidating the entire system. The necessities of military discipline, particularly involving our troops stationed abroad, suggest the impossibility, as even plaintiff recognizes, of fashioning a system of military justice from which the subtleties of command influence have been

---

2. *E. g.,* 1 Department of Defense, Report of the Task Force on the Administration of Military Justice in the Armed Forces (1972); Comptroller General of the United States, Military Jury System Needs Safeguards Found in Civilian Federal Courts iii, 5 (1977); *Military Justice: Joint Hearings Before the Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary and a Special Subcomm. of the Sen-* *ate Comm. on Armed Services,* 89th Cong., 2d Sess. 76–77 (Sidney Wolff, Chairman, Military Justice Comm., N.Y.S.B.A.), 196 (John S. Stillman, Chairman, Am. Veterans Comm.), 221, 226 (Herbert E. Monks), 302, 305 (Hon. Homer Ferguson, U.S.C.M.A.) (1966) [hereinafter cited as *Hearings*].

3. *See, e. g., Hearings, supra* note 2.

wholly purged. Moreover, the scant record in this case raises as many questions as it answers and will not support the finding plaintiff urges.

Plaintiff's counsel recognized at oral argument that the issues raised should logically and more properly be addressed by Congress. Having failed in his effort to bring about the reforms he and many other conscientious observers of the military justice system deem appropriate, he turns to the courts. However apparent it may be that there is room to modernize the Code without any harm to the essential missions of our armed forces, this is not the function of the Court.

Few will any longer contend that the military justice system, in spite of its many protective features, does not facially present the appearance of partiality. Those, such as plaintiff, convicted of criminal charges will never understand how a single individual can find probable cause and then pick the lawyers for the trial and the board that decides the case. The military is subjected to different, less exacting constitutional standards as has been noted. Nonetheless, it must not ignore the Constitution, and there is no doctrine that requires it to march on the ragged edge between the permissible and the prohibited. Our standards of due process change with experience as we seek to perfect the relationship of government to its people. The great prestige held by our armed services reflects in part the adaptability of the military and its sensitivity to civilian concerns. This case puts into focus such an area of concern in which remedies are not too difficult to find and gradual steady progress should be made.

The Court, however, has no 'legislative role. Precedents previously cited require the conclusion that plaintiff has not met his heavy burden, and his attempt to have the military justice system declared unconstitutional has failed. Summary judgment is granted defendants and denied plaintiff.

SO ORDERED.