**Robert E. CURRY, Appellant,**

v.

**SECRETARY OF the ARMY et al.**

No. 78–1031.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 1, 1978.

Decided March 14, 1979.

Rehearing Denied April 19, 1979.

J. Francis Pohlhaus, Washington, D. C., for appellant.

Regina C. McGranery, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George and William H. Briggs, Jr., Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before TAMM and MacKINNON, Circuit Judges, and JOHN H. PRATT,* United States District Judge for the District of Columbia.

Opinion for the court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge:

We review in this appeal a due process attack on provisions of the Uniform Code of Military Justice (UCMJ) which assign multiple roles to the convening authority[1] in court-martial proceedings. The district court (Gesell, J.) upheld the constitutionality of these provisions, and we affirm.

I

The facts of this case are not in dispute. Curry was an enlisted man, stationed in Germany, in the United States Army. On March 8, 1975, he was convicted of two homicides[2] by a general court-martial. The sentence imposed by the court-martial included hard labor for twelve years, reduction to the lowest enlisted grade, and dishonorable discharge. The convening authority approved Curry's conviction and sentence.[3] The Army Court of Military Re-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. As relevant to this case, the convening authority in the Army is defined in the Uniform Code of Military Justice (UCMJ) Art. 22, 10 U.S.C. § 822 (1976) as follows:

   (a)(3) the commanding officer of a Territorial Department, an Army Group, an Army, an Army Corps, a division, a separate brigade, or a corresponding unit of the Army or Marine Corps;

   .    .    .    .    .    .

(b) If any such commanding officer is an accuser, the court shall be convened by superior competent authority, and may in any case be convened by such authority if considered desirable by him.

2. The homicides resulted from a car accident caused by Curry who was driving while intoxicated.

3. See UCMJ Art. 64, 10 U.S.C. § 864 (1976) which provides:

   In acting on the findings and sentence of a court-martial, the convening authority may approve only such findings of guilty, and the

view affirmed his conviction, but reduced his sentence to eight years.[4] The United States Court of Military Appeals declined review.[5] Curry later requested relief from the Board for Correction of Military Records,[6] which was denied.

Curry then brought suit in the United States District Court for the District of Columbia against appellees, the Secretary of the Army, et al. (Army),[7] seeking injunctive and monetary relief. Curry collaterally attacked the validity of his conviction[8] on the ground that provisions of the UCMJ assigning multiple roles to the convening authority in the initiation, prosecution, and review of courts-martial deprive military defendants of a fair and impartial trial in violation of the due process clause of the fifth amendment. Both parties filed motions for summary judgment. Judge Gerhard Gesell heard arguments on the cross-motions and, in a memorandum opinion and order, granted the Army's motion. See Curry v. Secretary of Army, 439 F.Supp. 261, 262 (D.D.C.1977). This appeal ensued.

## II

General courts-martial are judicial tribunals[9] that try members of the Armed Forces who are charged with violations of the UCMJ.[10] They can consist of either a military judge and not less than five members who are military personnel, or, at the request of the accused, a military judge alone.[11] The members of a court-martial decide whether the accused is guilty and, if so, what sentence should be imposed. The military judge rules on questions of law and instructs the members on what they must find to convict the accused. If the court-martial is composed only of a military judge, the judge rules on all matters.[12]

The convening authority, who is generally the commanding officer, see note 1 supra, participates in various levels of the court-martial process. He determines whether charges should be referred to the court-martial,[13] selects the members of the court-martial,[14] details the military judge,[15] and details the prosecuting and defense counsel.[16] The convening authority also reviews the court-martial record.[17] He can approve the findings and sentence,[18] return for re-

---

sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved. Unless he indicates otherwise, approval of the sentence is approval of the findings and sentence.
See also UCMJ Arts. 60–63, 10 U.S.C. §§ 860–863 (1976).

**4.** See UCMJ Art. 66, 10 U.S.C. § 866 (1976).

**5.** See UCMJ Art. 66, 10 U.S.C. § 866 (1976).

**6.** See 10 U.S.C. § 1552 (1976). Curry asked the Board for Correction of Military Records to expunge from his records all reference to his conviction and to revoke his dishonorable discharge.

**7.** The United States is also named as an appellee.

**8.** The Supreme Court specifically authorized collateral review of court-martial convictions in Schlesinger v. Councilman, 420 U.S. 738, 746–48, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). See also Kauffman v. Secretary of Air Force, 135 U.S.App.D.C. 1, 2, 4–5, 415 F.2d 991, 992, 994–95 (1969), cert. denied, 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1970).

**9.** See Middendorf v. Henry, 425 U.S. 25, 31, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976) ("courts-martial resemble judicial proceedings"); Runkle v. United States, 122 U.S. 543, 558, 7 S.Ct. 1141, 1147, 30 L.Ed. 1167 (1887) ("whole proceeding from its inception is judicial").

**10.** UCMJ Arts. 2, 17–18, 10 U.S.C. §§ 802, 817–818 (1976).

**11.** UCMJ Arts. 16(1), 25, 10 U.S.C. §§ 816(1), 825 (1976).

**12.** UCMJ Arts. 51, 52, 10 U.S.C. §§ 851, 852 (1976).

**13.** UCMJ Art. 34, 10 U.S.C. § 834 (1976).

**14.** UCMJ Art. 25(d)(2), 10 U.S.C. § 825(d)(2) (1976).

**15.** UCMJ Art. 26(a), 10 U.S.C. § 826(a) (1976). But see text at 13 & n. 37 infra.

**16.** UCMJ Art. 27(a), 10 U.S.C. § 827(a) (1976). But see text at 13 & n. 32 infra.

**17.** UCMJ Art. 60, 10 U.S.C. § 860 (1976).

**18.** UCMJ Art. 64, 10 U.S.C. § 864 (1976); see note 3 supra.

consideration and appropriate action specifications dismissed without a finding of not guilty,[19] or disapprove findings of guilty and the sentence imposed.[20]

Curry maintains this system places the convening authority in the position of grand jury, selector of the trial judge, jury, and counsel, and appellate court. Brief for the Appellant at 8–9. He submits that the convening authority, having initiated the prosecution, has an interest in the result of the case and is therefore constitutionally incapable of insuring that the accused receives a fair and impartial trial. *See generally In re Murchinson,* 349 U.S. 133, 136–37, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Curry suggests that the convening authority, because of his prior interest, is likely to appoint individuals to serve as counsel and court members who generally are more inclined to find an accused guilty than would a random sampling of military personnel. The accused could thus be denied vigorous representation as well as the wide spectrum of attitudes basic to the American idea of trial by jury.

Moreover, Curry asserts that the possibility for unfairness persists, even if the individuals selected by the convening authority are not predisposed toward conviction. The court members and the counsel, usually under the command of the appointing officer, may be particularly susceptible to his influence. They are dependent upon him for their promotions, their efficiency ratings, their assignments of duty, and their furloughs. Curry argues that because the court members and counsel know they are subject to the convening authority, who has ample opportunity to manifest his displeasure with the manner in which those under his command have handled a case, the likelihood is increased that the court-martial will return a guilty verdict.

Curry alleges, and it is undisputed, that the convening authority referred the charges against him to the court-martial for trial. The convening authority detailed the military judge who presided at the court-martial, and he selected the members of the court and the counsel. The convening authority reviewed the record on both the facts and the law. Curry therefore claims his conviction is invalid.

■ Although Curry can demonstrate no specific prejudice, *see Curry v. Secretary of Army,* 439 F.Supp. at 262, a showing of actual prejudice is not a prerequisite to finding a conviction constitutionally invalid on due process grounds. If a procedure "involve[s] such a probability that prejudice [may] result," it will be struck down and the conviction reversed. *Estes v. Texas,* 381 U.S. 532, 542–43, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543 (1965); *see, e. g., Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); *McGill v. United States,* 121 U.S.App.D.C. 179, 181, 348 F.2d 791, 793 (1965). Curry urges that the prior interest of the convening authority in the outcome of the case, coupled with the specter of his influence over those in his command, irreparably taint the system and preclude the possibility of a fair and impartial trial. These allegations, although not new, raise important questions of constitutional law that merit careful evaluation.

### III

■ A person convicted by a court-martial is entitled to due process of law under the fifth amendment. What process is due, however, depends upon "an analysis of the interest of the individual and those of the regime to which he is subject." *Middendorf v. Henry,* 425 U.S. 25, 43, 96 S.Ct. 1281, 1291, 47 L.Ed.2d 556 (1976); *see Burns v. Wilson,* 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1943) ("[T]he rights of men in the Armed Forces must perforce be conditioned to meet certain overriding demands of discipline and duty."). At the outset, we note the difficult burden a liti-

---

**19.** UCMJ Art. 62(a), 10 U.S.C. § 862(a) (1976).

**20.** UCMJ Art. 64, 10 U.S.C. § 864 (1976). Findings of not guilty cannot be overturned, how-ever, and the severity of the sentence cannot be increased unless the prescribed sentence is mandatory. UCMJ Arts. 62(b), 63(b), 10 U.S.C. §§ 862(b), 863(b) (1976).

gant shoulders when he challenges congressional decisions governing military practices. Article I, section 8 of the Constitution empowers Congress to "make Rules for the Government and Regulation of the land and naval Forces." The importance of maintaining an effective military to insure national security renders this power especially broad. Consequently, a court reviewing legislatively approved military procedure "must give particular deference to the determination[s] of Congress." *Middendorf v. Henry,* 425 U.S. at 43, 96 S.Ct. at 1291; *see Schlesinger v. Councilman,* 420 U.S. 738, 757–58, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

Curry premises his challenge on two points. First, he contends that the present structure of the court-martial system is fundamentally incompatible with the fifth amendment guarantee of due process and clearly would be prohibited in a civilian context. Next, he argues that the military has failed to produce *any* justification for the system. Absent compelling military exigencies, Curry submits, departure from the traditional structure of the civilian system of criminal justice is unwarranted. Brief for Appellant at 6, 15, 34. We agree that the system established in the UCMJ would be inconsistent with due process if instituted in the context of a civilian criminal trial.[21] We do not agree, however, with Curry's second contention.

■ We begin with the unassailable principle that the fundamental function of the armed forces is "to fight or be ready to fight wars." *Toth v. Quarles,* 350 U.S. 11,

17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). Obedience, discipline, and centralized leadership and control, including the ability to mobilize forces rapidly, are all essential if the military is to perform effectively. The system of military justice must respond to these needs for all branches of the service, at home and abroad, in time of peace, and in time of war.[22] It must be practical, efficient, and flexible.

The Supreme Court has recognized that the military is "a specialized society separate from civilian society," and its unique circumstances and needs justify a departure from civilian legal standards. *See Parker v. Levy,* 417 U.S. 733, 743–44, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974) ("fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it"); *see also Middendorf v. Henry,* 425 U.S. at 38–39, 96 S.Ct. 1281; *Schlesinger v. Councilman,* 420 U.S. at 757, 95 S.Ct. 1300; *Burns v. Wilson,* 346 U.S. at 140, 73 S.Ct. 1045. The Court specifically stated that the peculiar nature of military service is such that courts-martial "probably never can be constituted in such way that they can have the same kind of qualifications that the Constitution has deemed essential to fair trials of civilians in federal courts." *Toth v. Quarles,* 350 U.S. at 17, 76 S.Ct. at 5. This court, too, has noted the differences between military life and civilian life and the concomitant need for different procedures and rules. *See, e. g., Culver v. Secretary of Air Force,* 182 U.S.App.D.C.

---

**21.** *Compare In re Murchinson,* 349 U.S. 133, 136–37, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (trial of witnesses for criminal contempt before judge who, under state law, served as a "one-man grand jury" in a criminal investigation out of which contempt charges arose, violated due process); *and Ward v. Village of Monroeville,* 409 U.S. 57, 58–59, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) (trial of traffic violator before mayor who was responsible for village finances and whose court, through fines, forfeitures, costs, and fees, provided a substantial portion of village funds violated due process) *with Withrow v. Larkin,* 421 U.S. 35, 58, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (combination of investigative and adjudicative functions in administrative agency does not, without more, constitute

a denial of due process). *See also United States v. McCarthy,* 2 M.J. 26, 29 n. 3 (C.M.A. 1976).

**22.** The House and Senate debates focused on the practicality of the UCMJ. Representative Brooks echoed the attitude shared by others when he observed, "[w]e cannot escape the fact that the law which we are now writing will be applicable and must be workable in time of war as in time of peace." 95 Cong.Rec. 5721–22 (1949); *see* 96 Cong.Rec. 1444 (1950) (remarks of Sen. Kefauver). *See generally Huff v. Secretary of Navy,* 188 U.S.App.D.C. 26, 35–6, 575 F.2d 907, 916–20 (1978) (Tamm, J., concurring in part, dissenting in part).

1, 11, 559 F.2d 622, 632 (1977) (Leventhal, J., concurring); *Committee for G.I. Rights v. Callaway,* 171 U.S.App.D.C. 73, 81, 518 F.2d 466, 474 (1975); *Kauffman v. Secretary of Air Force,* 135 U.S.App.D.C. 1, 7, 415 F.2d 991, 997 (1969), *cert. denied,* 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1970).

■ Curry primarily attacks the power of the convening authority to refer charges to the court-martial and then to select its members. Contrary to his assertions, however, we find these provisions sufficiently responsive to the unique needs of the military to withstand constitutional challenge.[23] In reviewing the proffered rationale, we are reminded that the administration of justice on the battlefield involves consideration of factors far removed from day-to-day civilian life. We again emphasize that the standards of military justice in peacetime must be equally applicable in time of war and national emergency. *See* note 22 *supra.*

■ The power of the convening authority to refer charges to the court-martial is justifiable on two grounds. First, prosecutorial discretion may be essential to efficient use of limited supplies and manpower. The decision to employ resources in a court-martial proceeding is one particularly within the expertise of the convening authority who, as chief administrator as well as troop commander, can best weigh the benefits to be gained from such a proceeding against those that would accrue if men and supplies were used elsewhere. The balance struck is crucial in times of crisis when prudent management of scarce resources is at a premium. Second, as we previously have stated, maintenance of discipline and order is imperative to the successful functioning of the military. The commanding officer's power to refer charges may be necessary to establish and to preserve both.

■ Provisions of the UCMJ authorizing the convening authority to select the members of the court-martial also respond to unique military needs. In order for the command to function effectively, the officer in charge must be assured that he has capable personnel available to perform various tasks. The duties his troops will be called upon to carry out may be difficult, if not impossible, to predict in advance. *See UCMJ: Hearings on H.R. 2498 Before Subcomm. of House Comm. on Armed Services,* 81st Cong., 1st Sess. 1114 (1949) ("absolutely impossible in wartime for a commander to determine in advance what men he could spare for a panel") (statement of Prof. Edmund M. Morgan, Harvard Law School). The commanding officer is well situated to determine whether the various needs of the service will be best served by the selection and participation of particular individuals in a court-martial proceeding. If, on the other hand, court-martial members were required to be chosen from a broad panel of military personnel, a large number of men would be immobilized and effectively removed from the direct control of the commanding officer pending completion of the selection process. Strategic success and human safety could be jeopardized by so impeding the commanding officer's ability to deploy troops.[24] In addition, assembling a panel is frequently a logistic impossibility in combat situations, *see* 92 Cong.Rec. 1444 (1950) (remarks of Sen. Kefauver), or if the jury is chosen from troops dispersed over a widespread geographic area.

Proponents of the present system also assert that selection of court members by the commanding officer is the most expeditious way to convene a military jury. Assurance of a prompt and speedy trial, a desirable feature in any system of criminal justice, is especially important in the armed services. The very nature of military life requires prompt judicial action. Tactical and training situations necessitate movement of units; witnesses may be transferred or move into combat. If a case is not tried quickly, evidence or testimony may be

---

**23.** For a thorough discussion of the rationale underlying each of these provisions, *see* H. Moyer, Justice and the Military §§ 3–130 to 3–287 (1972); Hansen, *Judicial Functions for the Commander?,* 41 Mil.L.Rev. 1, 19–50 (1968).

**24.** The commanding officer's power to determine the availability of counsel, *see* text at —— & n. 32 of 194 U.S.App.D.C., text at 879 & n. 32 of 595 F.2d *infra,* is also justifiable on this basis.

irretrievably lost. Further, the deterrent effect of immediate punishment may be crucial to the maintenance of discipline in crisis situations.

■ Congress, in drafting the UCMJ, was aware of the potential for unfairness in the system created to respond to the needs of military justice. Indeed, the problem of unlawful "command influence" was a major point in dispute in the discussions that preceded enactment of the UCMJ, as well as in subsequent legislative hearings.[25] Congress responded by taking specific precautions to protect against its improper exercise. For example, before ordering a trial, the convening authority must consult his staff judge advocate concerning the sufficiency of the charges and the availability of the evidence.[26] Upon review of a conviction, the staff judge advocate must submit to the convening authority an opinion which becomes part of the record.[27] If the convening authority approves a sentence that extends to death, dismissal of a commissioned officer, cadet, or midshipman, dishonorable discharge, or confinement for one year or more, a Court of Military Review must re-view the record.[28] The United States Court of Military Appeals, a court composed of civilian judges " 'completely removed from all military influence or persuasion,' " *Schlesinger v. Councilman,* 420 U.S. at 758, 95 S.Ct. at 1313 (quoting H.R.Rep.No.491, 81st Cong., 1st Sess. 7 (1949)), may review legal challenges raised by the defendant.[29]

Congress further provided the accused with a wide range of procedural rights to guard against command influence. A defendant is guaranteed legal representation at both trial[30] and appellate levels.[31] He may select his own military counsel, so long as the counsel is "reasonably available,"[32] or he may provide his own civilian counsel.[33] He may request that the general court-martial include at least one-third enlisted members.[34] He may challenge any member for cause, and he has one preemptory challenge.[35] The accused may also elect to be tried by a military judge alone,[36] who is designated by the Judge Advocate General and well insulated from command influence.[37]

Finally, and most importantly, Article 37 of the UCMJ broadly prohibits the improper

**25.** *See Constitutional Rights of Military Personnel: Hearings Before Subcomm. on Constitutional Rights of Senate Comm. on Judiciary,* 87th Cong., 2d Sess. 137–38, 222, 233 (1962); 96 Cong.Rec. 1443 (1950) (remarks of Sen. Kefauver); *UCMJ–Hearings on H.R. 2498 Before Subcomm. of House Comm. on Armed Services,* 81st Cong., 1st Sess. 605–06 (1949). *See also* H. Moyer, Justice and the Military §§ 3–100, 3–113.

**26.** UCMJ Art. 34, 10 U.S.C. § 834 (1976).

**27.** UCMJ Arts. 61, 65(b), 10 U.S.C. §§ 861, 865(b) (1976).

**28.** UCMJ Art. 66(b), 10 U.S.C. § 866(b) (1976). The members of this court are all lawyers from the Office of the Judge Advocate General who review the law, the facts, and the sentence.

**29.** UCMJ Art. 67, 10 U.S.C. § 867 (1976).

**30.** UCMJ Art. 27(a)(b), 10 U.S.C. § 827(a), (b) (1976). Counsel must be lawyers and previously cannot have acted as investigating officer, military judge, or court member in the case.

**31.** UCMJ Art. 70, 10 U.S.C. § 870 (1976).

**32.** UCMJ Art. 38(b), 10 U.S.C. § 838(b) (1976). The determination whether the requested coun-sel is available is made by the convening authority. If it is determined that counsel is not available, that decision is conveyed to the accused, who may, in most instances, appeal the finding to the next superior authority in the chain of command. Reasons for unavailability are included in the trial record. *See generally* H. Moyer, Justice and the Military § 3–182.

**33.** UCMJ Art. 38(b), 10 U.S.C. § 838(b) (1976).

**34.** UCMJ Art. 25(c)(1), 10 U.S.C. § 825(c)(1) (1976).

**35.** UCMJ Art. 41, 10 U.S.C. § 841 (1976).

**36.** UCMJ Art. 16(1)(B), 10 U.S.C. § 816(1)(B) (1976).

**37.** UCMJ Art. 26(c), 10 U.S.C. § 826(c) (1976). Military judges are assigned directly to the Judge Advocate General of the service and are responsible only to him for the performance of their judicial duties. Article 26(c) specifically prohibits the convening authority or any member of his staff from preparing or reviewing "any report concerning the effectiveness, fitness, or efficiency of the military judge . . . which relates to his performance of duty as a military judge." *See* S.Rep.No. 1601, 90th

use of command influence.[38] Article 98 makes a violation of Article 37 a military offense.[39]

We find the justifications offered in support of the provisions now under review, coupled with the safeguards specifically provided by Congress to protect against improper command influence, *see Committee for G.I. Rights v. Callaway,* 171 U.S.App. D.C. at 87, 518 F.2d at 480, sufficient to withstand Curry's challenge. We do not imply, however, that the system of military justice, as presently constructed, is the sole means capable of satisfying the unique needs of the armed services. We hold only that, given our substantial deference to Congress in military matters, the balance struck is constitutionally permissible.

## IV

We conclude by again recognizing that establishing the proper relationship "be-

tween the legitimate needs of the military and the rights of the individual soldier presents a complex problem which lends itself to no easy solution." *Id.* The inquiry involves reconciliation of the conflicting social values inherent in the maintenance of a standing army in a democratic nation. The need for national defense mandates an armed force whose discipline and readiness is not unnecessarily undermined by the often deliberately cumbersome concepts of civilian jurisprudence. Yet, the dictates of individual liberty clearly require some check on military authority in the conduct of courts-martial. The provisions of the UCMJ with respect to court-martial proceedings represent a congressional attempt to accommodate the interests of justice, on the one hand, with the demands for an efficient, well-disciplined military, on the other.

For the foregoing reasons, we find the balance struck by Congress constitutionally

Cong., 2d Sess. 7 (1968) U.S.Code Cong. & Admin.News 1968, p. 4501 (Section [2] (9) of the Military Justice Act of 1968, adding this provision to the UCMJ, created an " 'independent field judiciary.' ").

**38.** UCMJ Art. 37, 10 U.S.C. § 837 (1976), provides:

(a) No authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercise of its or his functions in the conduct of the proceeding. No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts. The foregoing provisions of the subsection shall not apply with respect to (1) general instructional or informational courses in military justice if such courses are designed solely for the purpose of instructing members of a command in the substantive and procedural aspects of courts-martial, or (2) to statements and instructions given in open court by the military judge, president of a special court-martial, or counsel.

(b) In the preparation of an effectiveness, fitness, or efficiency report, or any other report or document used in whole or in part for

the purpose of determining whether a member of the armed forces is qualified to be advanced, in grade, or in determining the assignment or transfer of a member of the armed forces or in determining whether a member of the armed forces should be retained on active duty, no person subject to this chapter may, in preparing any such report (1) consider or evaluate the performance of duty of any such member as a member of a court-martial, or (2) give a less favorable rating or evaluation of any member of the armed forces because of the zeal with which such member, as counsel, represented any accused before a court-martial.

*See* S.Rep.No. 1601, 90th Cong., 2d Sess. 9 (1968) U.S.Code Cong. & Admin.News 1968, p. 4509 (The explicit purpose of Article 37 is to prohibit "unlawful command influence exerted on members or officials of a court-martial by the convening authority or other commanding officers.").

**39.** UCMJ Art. 98, 10 U.S.C. § 898 (1976), provides:

Any person subject to this chapter who—
(1) is responsible for unnecessary delay in the disposition of any case of a person accused of an offense under this chapter; or
(2) knowingly and intentionally fails to enforce or comply with any provision of this chapter regulating the proceedings before, during, or after trial of an accused; shall be punished as a court-martial may direct.

permissible, and the judgment of the district court is

*Affirmed.*