UNITED STATES, Appellee,

v.

Joseph A. HARDIN, Boiler Technician
Third Class, U. S. Navy, Appellant.

No. 35,692.

NCM 77 1605.

U. S. Court of Military Appeals.

Oct. 15, 1979.

For Appellant—*Lieutenant Lawrence W. Muschamp*, JAGC, USN (argued); *Lieutenant Philip G. Cohen*, JAGC, USNR (on brief).

For Appellee—*First Lieutenant Craig L. Kemmerer*, USMCR (argued); *Commander T. C. Watson, Jr.*, JAGC, USN (on brief).

## Opinion

FLETCHER, Chief Judge:

At a general court-martial, the appellant was convicted of the possession, sale and transfer of marihuana,[1] in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. He was sentenced to a bad-conduct discharge, 7 months' confinement at hard labor and accessory punishments. On appeal under Article 66, UCMJ, 10 U.S.C. § 866, the Court of Military Review disapproved the findings of guilty on the possession offense, reduced some portions of the sentence, but approved the remaining specifications and the punitive discharge.

Review was granted in this case to consider whether these remaining offenses were subject to court-martial jurisdiction, and whether the military judge erred to the substantial prejudice of the appellant by failing to order a new pretrial advice.[2]

### I

Prior to trial on the merits, defense counsel moved to dismiss these specifications on the ground that the court-martial lacked subject-matter jurisdiction. In particular, he pointed out that the sale and transfer occurred 13 miles off base in a civilian community and some understanding existed between the parties to the transaction which indicated that the marihuana would not be returned to the base or resold on the ship.

---

1. The specific quantity of marihuana was 812 grams, an amount somewhat less than two pounds.

2. Article 34, Uniform Code of Military Justice, 10 U.S.C. § 834.

Fireman Recruit Salazar testified that he was stationed on the USS CHICAGO with the appellant. Pursuant to the directions of an agent of the Naval Investigative Service, he contacted the appellant for the purpose of purchasing a quantity of marihuana. Appellant had apparently become a suspect because he had earlier indicated to Salazar that he possessed 20 kilos of marihuana. At first, Salazar's contacts with appellant were not successful because appellant indicated that he did not desire to sell marihuana while on the Naval base. Further negotiations while on board the USS CHICAGO, however, resulted in an agreement between Salazar and the appellant for the sale of marihuana. Arrangements for transportation for Salazar were also made at this time. A companion of the appellant later drove Salazar to appellant's apartment, where Salazar gave to the appellant money and received a significant amount of marihuana from him. Salazar testified to the effect that he agreed that the marihuana would not be brought aboard the ship and indicated to appellant that he would give the marihuana to a partner for safekeeping while he was on leave. He further testified that appellant's companion then transported him to an area located near the main gate to the Naval base, where he delivered the marihuana to an agent of the Naval Investigative Service.

The military judge resolved the jurisdictional issue against the appellant, but defense counsel subsequently renewed the motion to include additional factors bearing on the matter; namely, that civilian law enforcement officials had been involved in the apprehension of appellant and that some evidence tended to show civilians were in appellant's apartment during the period in question. The motion was again denied by the military judge, with the following comments:

First of all based on the evidence presented it is apparent that that criminal intent was formulated on base; that the rendezvous to make arrangements for the drug transactions occurred on base; that the agreement leading to the trans-action and the arrangement for the transactions was made on base; that Petty Officer Hardin indicated to Salazar that he had a substantial quantity of marihuana; that the transportation to and from the residence off base, where the transaction occurred, was arranged for the expressed purpose of effecting a sale or transfer of marijuana; that at the time of the transaction Salazar, the alleged purchaser of marijuana, was temporarily relieved of a restricted status; that the information conveyed to Petty Officer Hardin was that another shipmate would receive the quantity of marijuana allegedly sold to Salazar; and, that based on those factors and consideration of other evidentiary matters presented, that Petty Officer Hardin must have known that in all probability his buyers or buyer and the transferees would be other service personnel.

■ The appellant contends that the factual circumstances surrounding this drug transaction are insufficient to sustain the exercise of court-martial jurisdiction as curtailed in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and as delineated by the specific criteria set forth in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). His challenge rests primarily on the assertion that since this drug transaction constituted no threat to the military community in the form of reintroduction on base or sale aboard ship, military authorities had no interest in its prosecution justifying the exercise of court-martial jurisdiction. We reject this argument outright as a matter of fact in the present case and as a matter of law. An obviously unenforceable agreement as the one ambiguously described and relied upon in the appellant's argument does not divest a court-martial of jurisdiction where other jurisdictional criteria of the *Relford* test more than adequately establish the service connection of such offenses.

As to the remaining factors of service connection, we find them sufficient to support court-martial jurisdiction in the

present case. In *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976), the Court rejected a simple geographic approach to this jurisdictional question. We upheld the accused's conviction by court-martial for transferring marihuana to a fellow soldier in an off-post area because other factors indicated that the military had an overriding interest in the prosecution. Subsequently, a majority of the Court in *United States v. Alef*, 3 M.J. 414, 418 n. 12 (C.M.A. 1977), reversed a conviction for the off-post sale and possession of cocaine but noted: "This sale and all the essential underlying negotiations occurred off-post with all indications from the record being that the parties had blended into the civilian community." Recently, we affirmed a conviction for an off-post offense because the underlying negotiations took place on post. *United States v. Strangstalien*, 7 M.J. 225 (C.M.A. 1979).

■ The facts of appellant's case, as found by the military judge, clearly establish service connection within the meaning of the latter decisions and their Supreme Court progenitors. The underlying negotiations for this sale and transfer took place aboard the USS CHICAGO. Though the exchange of marihuana and money occurred off-base, the buyer was returned to or near military property with the drugs. It cannot reasonably be said in this case that these military personnel or their criminal conduct blended into the civilian populace. *See United States v. Conn*, 6 M.J. 351 (C.M.A. 1979). Accordingly, we hold that the persuasive military interest in the prosecution of these offenses was sufficiently established and jurisdiction was properly exercised over the offenses for which appellant was convicted. *See Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

II

The second issue to be resolved on this appeal is whether the military judge erred to the substantial prejudice of the appellant in refusing to order a new pretrial advice. The appellant seeks at this stage of the appellate process either the return of this matter to its point of origin for a new pretrial advice and its possible processing through the system again, or outright dismissal. We reject such a polarization of case law and apogee of remedies without one legitimate statement from him as to an error in fact stated, fact left unstated, or judgment drawn therefrom which shows prejudice against him. For the reasons articulated hereinafter, we affirm the decision of the United States Navy Court of Military Review.

At an Article 39(a), 10 U.S.C. § 839(a) session prior to this court-martial, defense counsel moved for a new pretrial advice under Article 34, UCMJ, 10 U.S.C. § 834, on the ground that the challenged advice had been prepared by trial counsel. It is undisputed that Lieutenant Commander Nolta was the government counsel at the pretrial investigation, that he prepared the pretrial advice based on that investigation and its findings, and that he was subsequently appointed and served as trial counsel during appellant's court-martial. In addition, the parties to this court-martial stipulated to the testimony of Captain Zitanni, the Staff Judge Advocate who signed the pretrial advice, to the effect that he had adopted with certain modifications this pretrial advice so prepared. Trial defense counsel also asserted that the pretrial advice was deficient in several respects.

The appellant contends that Article 6(c), UCMJ, 10 U.S.C. § 806(c), and paragraph 35 b, Manual for Courts-Martial, United States, 1969 (Revised edition), disqualify Lieutenant Commander Nolta from preparing or participating in the preparation of the pretrial advice in the present case. In addition, he asserts that the preparation of this pretrial advice by an unqualified person denies him a fundamental pretrial right which requires reversal of his conviction if such a deprivation was objected to in a timely manner. *United States v. Mickel*, 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958). Relying on *United States v. Payne*, 3 M.J. 354 (C.M.A.1977), such a remedy is urged even if no particular prejudice is found to have

been suffered by the appellant as a result of the actual content of the challenged pretrial advice.

We cannot accept the judicial gloss placed on Article 34 by the appellant. His unjustified application of Article 6(c),[3] and implementation of a questionable Manual provision [4] transforms the pretrial advice required by Article 34 from a primarily prosecutorial codal tool into an additional judicial-type protection of a fundamental nature for the military accused. He accomplishes this result by elevating the pretrial adviser of the convening authority to a state of absolute impartiality required in the strict sense for a trial judge, reviewing authority or appellate court. This requirement, we believe, is illusory at this stage of the court-martial process and inconsistent with the role of the staff judge advocate envisioned in this codal provision.[5]

It is clear that Article 34 prohibits a case from being referred to a general court-martial unless the charge alleges an offense under the Code and is warranted by evidence indicated in the report of investigation. This is the fundamental right for the military accused under this Article, and it can be judicially enforced by means of an appropriate motion to the military judge at the general court-martial, which challenges such a referral on the above-stated grounds.

3. Article 6(c), Uniform Code of Military Justice, 10 U.S.C. § 806(c), on its face applies to the staff judge advocate acting for a reviewing authority. In the present case the appellant would extend its application to a staff judge advocate who prepares a pretrial advice for a referring authority. *See United States v. Dodge,* 13 U.S.C.M.A. 525, 33 C.M.R. 57 (1963). We find no substantial support in the legislative history of the Code or our case law for equating these two distinct functions of a staff judge advocate. Accordingly, the strict statutory disqualifications embraced in Article 6(c), which prevent a staff judge advocate from acting for a reviewing authority under Article 61, UCMJ, 10 U.S.C. § 861, do not necessarily apply to his performance of inherently prosecutorial functions under Article 34. *United States v. Smith,* 13 U.S.C.M.A. 553, 557–58, 33 C.M.R. 85, 89–90 (1963). The earlier decision in *United States v. Dodge, supra,* at 527 n. 1, 33 C.M.R. at 59 n. 1, is not contrary because there the Court only *assumed* it was applicable for purposes of that appeal and no more. *See generally* West, *Permissible Bounds of Staff Judge Advocate Pretrial Activity,* 23 Mil.L.Rev. 85–89 (1964) (D.A.Pam. 27–100–23, 1 January 1964).

4. The Uniform Code of Military Justice makes no provision for representation of the Government by counsel at a pretrial investigation. The Manual for Courts-Martial, United States, 1969 (Revised edition), does. *See* para. 34*c,* Manual, *supra.* The Manual also could be interpreted to prevent such government counsel at the pretrial investigation from participating with the staff judge advocate in the preparation of the pretrial advice required by Article 34. *See* para. 35*b,* Manual, *supra.* The codal foundation for such a position was found to be rooted in pure speculation by the Court in *United States v. Smith, supra,* at 558, 33 C.M.R. at 90. While we disagree that the Manual drafters were silent as to their intent in formulating paragraph 35*b,* Manual, *supra* (*see* Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951 p. 138), their consequential assertion of a legislative basis for this provision in Article 34, is unconvincing.

5. Judge Cook rejects my characterization of the pretrial advice as primarily a prosecutorial codal tool. He does so on the basis of the fact that the Code and a quarter century of unbroken judicial precedent recognize no dichotomy of functions in the staff judge advocate preparing a pretrial advice and later preparing an impartial post-trial review. Indeed, the performance of the former does not per se disqualify the staff judge advocate from conducting the latter. *United States v. Engle,* 1 M.J. 387 (C.M.A.1976). However, this is not a result of the pretrial advice and referral decision being classified as non-prosecutorial in nature but rather because the military justice system as established by Congress justifiedly permits such a procedure as a matter of due process. *See Curry v. Secretary of Army,* 595 F.2d 873 (D.C.Cir. 1979). In any event, the qualification of the post-trial reviewer in this case is not in issue since neither the government counsel at the pretrial investigation nor the purportedly tainted staff judge advocate participated in the post-trial review. The question here are their qualifications under the Code to participate in the preparation of the pretrial advice. It is well established that a staff judge advocate, in preparing the pretrial advice, acts like a district attorney and not a military judge. *See United States v. Smith, supra,* at 559, 33 C.M.R. at 91; *United States v. Hayes,* 7 U.S.C.M.A. 477, 480, 22 C.M.R. 267, 270 (1957). Accordingly, in my opinion, their earlier prosecutorial activities should not, by themselves, invalidate a pretrial advice produced as a result of his later performance of prosecutorial duties under Article 34.

*See United States v. Collins,* 6 M.J. 256, 258 (C.M.A.1979). Of course, the convening authority himself must act in good faith in exercising his prosecutorial discretion in light of these restraints. Moreover, this Court has found in the past that a section of this Article of the Code creates an important right for the military accused in that a case may not be referred to a general court-martial until a convening authority has received *legal advice on these matters from his staff judge advocate. See United States v. Schuller,* 5 U.S.C.M.A. 101, 17 C.M.R. 101 (1954). These codal responsibilities, however, do not change these persons into military judges.[6] It must be remembered that for the convening authority and the staff judge advocate, in their pretrial rather than in their post-trial, codal posture, these functions are exercised in a prosecutorial context. *See United States v. Smith,* 13 U.S.C.M.A. 553, 557–58, 33 C.M.R. 85, 89–90 (1963). The legal advice by the convening authority's counsel is not offered to judge the accused's innocence but to advise the referral authority whether he may legally proceed if he so desires. It is not binding on the convening authority. Accordingly, the accused's benefit from the pretrial advice, if any, is salutory in that it provides assurance that the pretrial investigation under Article 32, UCMJ, 10 U.S.C. § 832, was examined by one who is legally trained prior to any prosecutorial action taken by the convening authority. The pretrial advice not being judicial in nature,[7] why the strict requirement that its maker be such? In our mind, it is the military judge at the general court-martial who judicially enforces the military accused's rights under Article 34 as to the actual legal propriety of the referral and who should be so impartial in fact as well as appearance.

6. *Cf. United States v. Bunting,* 4 U.S.C.M.A. 84, 87, 15 C.M.R. 84, 87 (1954), which indicates that a convening authority's action under Article 34 requires "the exercise of a judicial judgment." However, this assertion is based on *Runkle v. United States,* 122 U.S. 543, 557–58, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887), which was a post-trial approval case. In *Curry v. Secretary of Army, supra,* similar action by the convening authority was properly characterized as an exercise of prosecutorial discretion.

In this light the staff judge advocate and the convening authority perform military justice roles in the pretrial stage of the proceedings clearly distinct from those embraced in their post-trial review functions. *United States v. Collins, supra.* Indeed, this was the design of Congress so as to establish the proper relationship between the legitimate needs of the military and the rights of an individual soldier. *See Curry v. Secretary of Army,* 595 F.2d 873 (D.C.Cir. 1979). I believe the per se disqualification and reversal rule urged by the appellant, without regard to the prejudicial nature of the advice, if any, and the legal soundness of the referral decision, upsets this balance constructed by Congress. Minimum legal requirements for prosecutorial action by the convening authority cannot reasonably be said to change him and his adviser into impartial judges, but they do impose on these codal actors the responsibility to act in the lawful manner envisioned by the Code. *See United States v. Roberts,* 7 U.S. C.M.A. 322, 326–27, 22 C.M.R. 112, 116–17 (1956). Accordingly, it is the lawfulness of their prosecutorial conduct performed in a professional manner which must be tested under Article 34, and not their functional inclinations at this stage of the proceedings.

In reviewing the 28-page pretrial advice which envelops six charges with 24 specifications, we find no statement that bespeaks a conclusion other than that supported by the facts set forth in the investigation. The summarization of the testimony is exemplary in its dispassionate evaluation. To find no error in the contents of the pretrial advice but per se error in the one who writes it is perception for perception's sake alone.

7. *See* the statement of Professor E. M. Morgan, Jr., Hearings Before a Subcommittee of the Committee on Armed Services, United States Senate, 81st Congress, First Session on Senate 857 and H.R. 4080 (1949), p. 39, reprinted in Uniform Code of Military Justice, Index and Legislative History (1949–1950).

The last statement does not mean that we believe perception is not important, but the desire for perceiving that an act is just must be balanced against the remedy to provide that perception. When perception thwarts the justice system as created by the Code, the system fails. When perception becomes the system, justice fails.

■ The question before this Court is whether the mere fact that government counsel at the pretrial investigation participated in the preparation of this otherwise sound pretrial advice requires automatic reversal of the appellant's conviction. A possible basis for the appellant's position is *United States v. Mickel, supra,* where it was held that a denial of a fundamental pretrial right (*e. g.* counsel), which was later asserted at trial, requires reversal without a demonstration of specific prejudice. We do not read Article 6 to create for the military accused a fundamental pretrial right to prevent government counsel from preparing this advice in conjunction with the staff judge advocate. This Article on its face and in its application by this Court has been restricted to the impartial review function of the staff judge advocate performed for a reviewing authority after trial. *United States v. Smith, supra* at 557, 33 C.M.R. at 89. As indicated earlier, we do not believe Article 34 itself was fundamentally intended by Congress to create such a right in the military accused. The decision in *United States v. Schuller, supra,* is not apposite. The error focused on by that Court was not the staff judge advocate's later position as law officer at the court-martial, but his failure as the convening authority's staff judge advocate to personally review the record and offer his professional recommendation. We find little support in that decision for the fundamental right now asserted by the appellant in the present case.[8]

■ While we do not find any fundamental pretrial right was denied to the appellant in the sense of the *Mickel* decision, error of a lesser nature conceivably occurred in the present case. Arguably, paragraph 35*b*, Manual, *supra*, prohibits government counsel at the pretrial investigation from preparing the pretrial advice. However, this is not a codal proscription and accordingly, if error, it can hardly be considered anything but ordinary. Indeed, problems of partisanship may arise in certain cases where government counsel must comment on the evidence, if any, he presents at the pretrial investigation. *See United States v. Morrison,* 3 M.J. 408, 412 n. 14 (C.M.A.1977). However, in view of the prosecutorial nature of the advice and the decision of the convening authority, and ultimate judicial review by the military judge, we would not extend military case law to require automatic reversal in the pretrial advice situation at this level. The advice must be tested for legal competence and accuracy as well as the possibility in the present case that the convening authority might have been misled in his prosecutorial decision as a result of some bias in the advice stemming from the staff judge advocate's prior involvement in the case. *See United States v. Smith, supra* at 564, 33 C.M.R. at 96 (Ferguson, J., concurring in the result). No such problems exist in this pretrial advice.

Relying on Article 59(a), UCMJ, 10 U.S.C. § 859(a), the decision of the United States Navy Court of Military Review is affirmed.

COOK, Judge (concurring):

I concur in the determination that court-martial jurisdiction was properly exercised. While I agree with the result as to the pretrial advice issue, I disagree with the reasoning leading to that result and, especially, with the declaration that the convening authority's responsibilities under Article 34, Uniform Code of Military Justice, 10 U.S.C. § 834, are "prosecutorial" in nature.

---

8. Appellant relies heavily, and we believe incorrectly, on our decision in *United States v. Payne,* 3 M.J. 354 (C.M.A.1977). There we were concerned with a trial counsel assisting an investigating officer in his judicial function under Article 32, UCMJ, 10 U.S.C. § 832. Here we are concerned with a trial counsel assisting a staff judge advocate and convening authority in their prosecutorial functions under Article 34.

Article 37(a), UCMJ, 10 U.S.C. § 837(a), provides, in material part, that no person may improperly "influence the action . . . of any convening . . . authority with respect to his *judicial* acts." (Emphasis added.) In *United States v. Ellsey,* 16 U.S. C.M.A. 455, 457, 37 C.M.R. 75, 77 (1966), this Court said:

> The convening authority's function in military justice is judicial in nature. His actions are magisterial, and this is so whether he grants pretrial relief to a party to the proceedings or, . . . denies it.

A quarter of a century ago, the Court said the "reference of the charges for trial requires the exercise of a judicial judgment, and consequently the power to refer would be clearly nondelegable." *United States v. Bunting,* 4 U.S.C.M.A. 84, 87, 15 C.M.R. 84, 87 (1954). I adhere to that view of the convening authority's responsibility in this aspect of his court-martial powers, and I perceive nothing to the contrary in *Curry v. Secretary of Army,* 595 F.2d 873 (D.C.Cir. 1979).

In *Curry,* the Court of Appeals rejected a challenge to a conviction by court-martial on the ground that the "multiple roles . . . [of] the convening authority in the initiation, prosecution, and review of courts-martial" deprived the accused of a fair trial in violation of the due process provision of the Fifth Amendment. *Id.* at 875. Commenting on the convening authority's power to refer a charge to trial and to select the members of the court-martial, the Court of Appeals observed that these powers were justifiable on two grounds. It described the first of these grounds as "prosecutorial discretion." As applied to selection of the court members the description is, obviously, inapt. More importantly, the Court referred, earlier, with manifest approval to Hansen, *Judicial Functions for the Commander?,* 41 Mil.L.Rev. 1, 19–50 (1968) (D.A. Pam. 27–100–41, 1 July 1968), as providing a "thorough discussion of the rationale" of the power of the convening authority to refer a charge to trial and to select the court members. *Id.* at 878 n. 23.

In his article, Colonel Hansen, citing this Court's opinion in *United States v. Roberts,* 7 U.S.C.M.A. 322, 22 C.M.R. 112 (1956), characterizes the power to refer a charge to trial as judicial in that it corresponds to powers "normally held by some judicial agency in the civilian community." Hansen, at 4. Colonel Hansen further observes, correctly I believe, that "[t]he essence of the judicial power [of the convening authority, as previously perceived by this Court] is the exercise of independent discretion unfettered by directives of higher authorities." (Footnotes omitted.) *Id.* In my opinion, it is in this respect that *Runkle v. United States,* 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887), is consistent with, not distinguishable from, *Bunting* as Chief Judge Fletcher maintains in note 6 of his opinion. In *Runkle,* the United States Supreme Court held that, while the President, in the exercise of his executive power under the Constitution, could act through the head of an executive department, the power granted to him by military law to approve or disapprove a dismissal adjudged by a court-martial "is judicial in its character," and, therefore, could not be delegated. *Id.* at 557, 7 S.Ct. 1141. *See also* Hansen, at 35–38.

The principal opinion concludes that the pretrial advice is a "prosecutorial codal tool," while recognizing that Article 61, UCMJ, 10 U.S.C. § 861, imposes strict disqualifying criteria upon a staff judge advocate in the preparation of the post-trial review. However, both the pretrial advice and the post-trial review are prepared by the staff judge advocate in his capacity as advisor to the convening authority. I reject, therefore, the determination that a staff judge advocate functions as a prosecutor in the first instance, but must be an impartial advisor in the second. This dichotomy of functions not only runs counter to a quarter century of unbroken judicial precedent, but turns the Uniform Code into something it is not. *See* my separate opinion in *United States v. Cansdale,* 7 M.J. 143, 149 (C.M.A.1979). Accordingly, I see no valid basis for adopting a different role for the pretrial advice.

Turning to the pretrial advice issue in the present case, I believe that the nature of trial counsel's action in respect to it has been misperceived by the accused. The advice bore only the signature of the staff judge advocate, but, at trial, defense counsel contended that, in fact, it was not the "objective document" it was "supposed to be," but "partisan" because it was "prepared" by trial counsel, who had acted as government counsel at the pretrial investigation hearing conducted by the investigating officer. Trial counsel acknowledged he had submitted proposed drafts of the advice, but disputed defense counsel's contention that he thereby made the advice legally unacceptable.

What trial counsel submitted to the staff judge advocate was described both by him and the staff judge advocate as a "proposed advice." Trial counsel said that he acted in accordance with the provisions of the service charter of the Naval Legal Service Office, the mission of which is to provide "necessary legal services," as required. The pretrial advice is identified in the charter as a matter in which assistance might be required. In his argument on the defense motion, trial counsel maintained he had acted "in accordance with the established procedures." The stipulated testimony of the staff judge advocate, which was received in evidence in connection with the motion, does not expressly refer to such procedure, but manifests that they were proceeding, not on an *ad hoc* basis, but pursuant to a pre-existing procedure. The precise details of the procedure do not appear in the record, but I have no doubt that its concept was rooted in a well-established practice in the civilian courts.

It is common, and eminently sensible, practice in the civilian courts for a judge to request one or all parties contesting a matter presented to him for decision on a completed record to submit to him a proposed judgment or decree setting out the essential findings of fact and conclusions of law.

The judge's acceptance of the proposed decree of one party, as presented and modified by him, to the exclusion of that of an opposing party, does not render invalid the decree signed by the judge because it is the initial product of a partisan advocate. Except for one apparent flaw, the procedure followed here is an adaptation of the civilian practice. The apparent flaw is that accused was not accorded the opportunity to submit a proposed draft or to object to, or request modification of, the draft proposed by the Government. *See* my separate opinion in *United States v. Payne*, 3 M.J. 354, 358 (C.M.A.1977). The failure to provide the defense with the opportunity does not transform the advice signed by the staff judge advocate into a partisan document, any more than a judge's acceptance of a party's proposed findings of fact and conclusions of law renders his signed judgment illegal. I discern no merit, therefore, in this aspect of the accused's challenge to the pretrial advice.

At trial, the accused also contended that the pretrial advice contained "questionable" inferences and inadequacies in the discussion of some of the testimony presented at the Article 32 hearing. As I write only to set out my own view, I need not elaborate on my reasons for concluding that this aspect of accused's challenge also lacks merit. Suffice it to say that some of the alleged defects are unsupported by the record and others are insignificant.

For the reasons indicated, I join in affirming the decision of the United States Navy Court of Military Review.

PERRY, Judge (concurring in part and dissenting in part): *

I concur with Chief Judge Fletcher's treatment of the issue pertaining to the pretrial advice and would not grant relief from the conviction in this case upon the ground that the person who prepared that pretrial advice was later designated to act as the prosecuting attorney (trial counsel).

---

* Judge Matthew J. Perry took final action in this case prior to his resignation as a judge of this Court pursuant to his appointment and confirmation as a United States District Judge for the District of South Carolina.

However, I disagree with that portion of the majority opinion which sustains the jurisdiction of the court-martial which tried and convicted the appellant. As the majority concedes, the sale and transfer of marihuana occurred at the appellant's residence at Imperial Beach, California, 13 miles from the naval base at which the appellant was stationed. That some underlying negotiations occurred on the naval base did not, in my view, confer jurisdiction upon the court-martial to convict the appellant of the substantive offense charged. I need not list the cases decided by a majority of the court that support my views concerning the jurisdiction of the court-martial to convict. *See* generally *United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976); *United States v. Sims*, 2 M.J. 109 (C.M.A.1977); *United States v. Smith*, 5 M.J. 129 (C.M.A.1978). While I adhere to the view expressed for the majority in those cases, I acknowledge that it is now at variance with the views of my colleagues.