# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

—————————————

## No. 201400067

—————————————

## UNITED STATES OF AMERICA
Appellee

v.

## MATTHEW P. HOFFMANN
Corporal (E-4), U.S. Marine Corps
Appellant

—————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Keith A. Parrella, USMC.
Convening Authority: Commanding General, II Marine Expeditionary Force, Camp Lejeune, North Carolina.
Staff Judge Advocate's Recommendation: Major Kara J. Zummo, USMC.
For Appellant: Commander Donald R. Ostrom, JAGC, USN; Captain Thomas Fricton, USMC.
For Appellee: Major Brian L. Farrell, JAGC, USN; Lieutenant Megan Marinos, JAGC, USN; Captain Sean M. Monks, USMC.

—————————————

Decided 9 July 2018

—————————————

Before GLASER-ALLEN, HUTCHISON, and SAYEGH, *Appellate Military Judges*

—————————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

—————————————

GLASER-ALLEN, Chief Judge:

A panel of officer members sitting as a general court-martial convicted the appellant, contrary to his pleas, of indecent liberties with a child and child enticement, in violation of Articles 120 and 134, Uniform Code Military

Justice (UCMJ), 10 U.S.C. §§ 920 and 934.[1] The members sentenced the appellant to ten years' confinement, reduction to paygrade E-1, total forfeiture of pay and allowances, and a dishonorable discharge. The CA approved seven years' confinement, reduction to paygrade E-1, total forfeiture of pay and allowances, and a dishonorable discharge. With the exception of the discharge, the convening authority (CA) ordered the approved sentence executed.

The appellant avers six assignments of error (AOE):[2]

(1) the military judge abused his discretion by admitting propensity evidence under MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 414, MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012 ed.);

(2) the military judge erred when he failed to instruct the members on the government's burden to prove the uncharged offenses occurred by a preponderance of evidence;[3]

(3) the military judge erred when he did not extend his ruling that Colonel (Col) W was disqualified from providing input on the Article 34 letter as staff judge advocate to include other areas of pretrial advice;

(4) the military judge should have recused himself;

(5) the appellant's sentence is inappropriately severe and highly disparate from a closely related case;[4] and

(6) there is error requiring corrective action in the appellant's Report of Results of Trial due to an incorrect Defense Incident-Based Reporting System (DIBRS) code.[5]

Having carefully considered the record of trial and the parties' submissions, we are convinced that the findings and the sentence are correct

---

[1] The members acquitted the appellant of attempted sodomy of a child.

[2] The AOEs have been renumbered for ease of discussion.

[3] This supplemental AOE was filed prior to our 21 February 2018 oral argument held at George Washington University Law School.

[4] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[5] In accordance with our recent decision in *United States v. Baratta*, 77 M.J. 691, 695 (N-M. Ct. Crim. App. 2018), we summarily reject the appellant's final AOE as the Report of Results of Trial in this case accurately reflects the findings and sentence. ("[DIBRS codes] are neither findings nor parts of a sentence, thus we do not have the authority to act upon them.") *Id*. at 695 (citing Article 66(c), UCMJ). *See United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

in law and fact and find no error materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

This case is before us for a second time. On 23 August 2013, the appellant was convicted of offenses involving "Ryan" and possession of child pornography.[6] On 18 February 2016, our superior court set aside the findings and sentence, dismissing the child pornography charges with prejudice and authorizing a rehearing on the charges involving Ryan.[7]

In April 2011, a man in a silver sport utility vehicle (SUV) with a yellow New York license plate drove by Ryan, a 13-year-old boy, several times while Ryan was walking home from school. On the third pass, the man pulled up and asked Ryan if he wanted a "quickie."[8] Ryan declined, and the man asked if Ryan knew what a "quickie" was. Ryan said "no," and the man drove around the block again. The man drove up to Ryan a fourth time and asked, "[a]re you sure," and "[y]ou'll like it."[9] Ryan again declined and ran home. He immediately reported the incident and provided a description of the vehicle to the local Jacksonville, North Carolina Police Department. Police were unable to locate the SUV driver at that time.

In September 2011, a man in a light colored SUV slowly drove by Alex, a 13-year-old boy, while he was walking home from school on board Camp Lejeune, North Carolina. On the first two passes, Alex noticed the man was wearing a desert camouflage uniform and making a gesture with his hand that Alex took to indicate fellatio. The third time the man drove by, he made the same gesture and asked Alex if he wanted to go for a ride. Alex declined, and the man drove away.

Also in about September 2011, a man in a silver SUV drove by Pete, a 10-year-old boy, while he was walking home from school on board Camp Lejeune. Pete noticed the man drove by making a similar indecent gesture to indicate fellatio. Pete noticed the SUV had a yellow license plate and spare wheel on the back, and the male driver was wearing a green military undershirt.

In November 2011, Alex saw the SUV that had approached him in September in the same vicinity of Camp Lejeune while he was walking home

---

[6] *United States v. Hoffmann*, 74 M.J. 542 (N-M. Ct. Crim. App. 2014). He was acquitted of similar offenses involving "Alex" and "Pete." All names are pseudonyms.

[7] *United States v. Hoffmann*, 75 M.J. 120 (C.A.A.F. 2016).

[8] Record at 423-26.

[9] *Id.*

from school. He took a picture of it and immediately called his mother, who promptly drove to his location. While returning home, Alex and his mother passed the SUV and began following it. A high speed chase ensued, but Alex's mother was unable to keep up with the SUV. She noticed the SUV was a "RAV4" with a hard case on the spare tire and yellow New York license plate.[10]

Pete's mother observed the on-base car chase, wrote down the SUV's license plate number, and provided it to Alex's mother.[11] Alex's mother called her husband with the description of the car and the license plate number. He was working on Camp Lejeune, and soon thereafter he located the SUV, followed it to a work site, and notified base police. Minutes later security arrived, identified the vehicle as belonging to the appellant, entered the appellant's workplace, and took the appellant into custody.

While the Naval Criminal Investigative Service (NCIS) was investigating the September and November on-base incidents involving Alex and Pete, they notified local police and became aware of the April off-base incident involving Ryan. Now having a suspect, the Jacksonville Police Department conducted a photographic line-up with Ryan, who identified the appellant with "95 percent certainty" as the man driving the SUV who enticed him.[12]

## II. DISCUSSION

### A. Uncharged propensity evidence

The appellant argues the military judge erred when admitting uncharged propensity evidence of his prior acquittals under MIL. R. EVID. 414 by improperly conducting the MIL. R. EVID. 403 balancing test. We disagree.

#### 1. *Admissibility of uncharged misconduct*

Three Military Rules of Evidence generally govern the relevance and admissibility of evidence of conduct already litigated in a prior court-martial. *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Hicks*, 24 M.J. 3, 8 (C.M.A. 1987). First, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." MIL. R. EVID. 401. "The military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members,

---

[10] *Id*. at 318.

[11] The license plate number recorded by Pete's mother nearly matched the appellant's plate number, with the exception of one letter. Record at 361-62.

[12] Record at 390, 441; Prosecution Exhibit 4, 5.

undue delay, wasting time, or needlessly presenting cumulative evidence." MIL. R. EVID. 403. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." MIL. R. EVID. 404(b)(1). But "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" MIL. R. EVID. 404(b)(2).

In *United States v. Reynolds*, 29 M.J. 105 (C.M.A. 1989), the Court of Military Appeals articulated a three-part test for the admissibility of uncharged misconduct under MIL. R. EVID. 404(b), including prior misconduct of which the accused was acquitted:

1. Does the evidence reasonably support a finding by the court members that the appellant committed prior crimes, wrongs, or acts?

2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?

3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?

*Id*. at 109 (citations omitted).

When an accused has been acquitted of conduct the government seeks to present as evidence in a subsequent case, the acquittal is a factor in the test for admissibility. "The fact of the prior acquittal may diminish the probative value of the evidence, however, and should be considered by the military judge when determining whether 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Hicks*, 24 M.J. at 8-9 (citing to MIL. R. EVID. 403) (additional citations omitted). An accused also has the right to prove that he or she was previously acquitted of the acts admitted into evidence under MIL. R. EVID. 404(b). *United States v. Cuellar*, 27 M.J. 50, 56 (C.M.A. 1988).

*2.* MIL. R. EVID. 414.

We review the admissibility of evidence under MIL. R. EVID. 414 for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). "'The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. Hurtado*, No. 201500051, 2016 CCA LEXIS 112, at *5-6, unpublished op. (N-M. Ct. Crim. App. 29 Feb 2016) (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)), *rev. denied*, 76 M.J. 348 (C.A.A.F. 2017).

MIL. R. EVID. 414 permits the military judge to admit evidence that the accused committed "any other offense of child molestation" and "may be considered on any matter to which it is relevant." MIL. R. EVID. 414. Thus, "inherent in [MIL. R. EVID. 414] is a general presumption in favor of admission." *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (citation omitted).[13]

Here the military judge combined his MIL. R. EVID. 414 propensity and MIL. R. EVID 404(b) uncharged misconduct analysis into a single ruling for efficiency. The same acquittal evidence was at issue under both evidentiary rules, and the MIL. R. EVID. 414 requirements incorporate the key aspects of the MIL. R. EVID. 404(b) test.

### 3. *MIL. R. EVID. 414 threshold requirements*

Before admitting evidence under MIL. R. EVID. 414, three initial threshold requirements must be met: (1) the accused is charged with an offense of child molestation within the meaning of MIL. R. EVID. 414(d); (2) the proffered evidence is that the appellant committed another offense of child molestation within the meaning of MIL. R. EVID. 414(d); and (3) the proffered evidence is logically relevant under both MIL. R. EVID. 401 and 402. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citations omitted). To meet the second requirement, the military judge must conclude that the members "could find by [a] preponderance of the evidence that the offenses occurred[.]" *United States v. Wright*, 53 M.J. 476, 483 (C.A.A.F. 2000) (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988)).

The military judge found the threshold requirements were met both on the record and in his written ruling. Regarding the first two prongs, he noted that during an Article 39(a), UCMJ, session, the defense conceded that the first two requirements under MIL. R. EVID. 414 were met "since at least one of the charged allegations, as well as the uncharged misconduct, fall within the definition of 'child molestation' under [MIL. R. EVID.] 414(d)."[14] The

---

[13] The *Berry* court was specifically dealing with MIL. R. EVID. 413, but the court's analysis applies to both MIL. R. EVID. 413 and 414. *See United States v. Tanner*, 63 M.J. 445, 448-49 (C.A.A.F. 2006) (noting the similar legislative history with MIL. R. EVID. 413, its "companion rule," and finding that MIL. R. EVID. 414, like MIL. R. EVID. 413, establishes a presumption in favor of admissibility of evidence of prior similar crimes in order to show predisposition to commit the designated crimes); *United States v. Luna*, No. 201500423, 2017 CCA LEXIS 314, at *13-18, unpublished op. (N-M. Ct. Crim. App. 9 May 2017), *aff'd*, _ M.J. _ . 2018 CAAF LEXIS 65 (C.A.A.F. Jan. 10, 2018) (summary disposition) (analyzing propensity evidence admitted under MIL. R. EVID. 414 using the same standards applied to MIL. R. EVID. 413).

[14] Appellate Exhibit (AE) XLVII at 3 n.4. *See also* Record at 159-60. The military judge went on to note that MIL. R. EVID. 414(d)(2)(A) and (G) define "child

military judge was satisfied that Alex and Pete's expected testimony was sufficient to meet the preponderance standard, explaining that "the government offered documentary evidence in support of their response to this motion including statements and depositions from all three minors, as well as statements from [Alex's] and [Pete's] parents."[15] He found that based on this evidence, the members could find by a preponderance of the evidence that the offenses alleged by Alex and Pete occurred and were committed by the appellant—despite the prior acquittals.

This evidence not only met the first two prongs of the MIL. R. EVID. 414 threshold requirements, but also the first prong of the *Reynolds* MIL. R. EVID. 404(b) test. Recognizing this overlap in the admissibility tests, the military judge found the MIL. R. EVID. 414 third threshold prong of logical relevance mirrored the second *Reynolds* prong regarding facts of consequence. He determined the acquittal evidence met both requirements:

> Additionally, this evidence may be relevant for its tendency to show motive, intent, common scheme or plan, or absence of mistake. Moreover, this evidence also provides the members with an understanding as to what the accused meant by "a quickie" since he made a hand gesture associated with fellatio when allegedly soliciting [Alex] and [Pete]. Finally, the evidence provides a complete picture as to how law enforcement first came to suspect the accused.[16]

Thus, the military judge concluded the evidence met all three MIL. R. EVID. 414 threshold requirements as well as the first two prongs of the *Reynolds* test.

### 4. MIL. R. EVID. 403 balancing test and the Wright/Berry factors

Once the evidence meets the three threshold requirements under MIL. R. EVID. 414, "the military judge is constitutionally required to also apply a balancing test under [MIL. R. EVID.] 403" to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Solomon*, 72 M.J. at 179-80 (citing *Berry*, 61 M.J. at 95). When conducting this balancing test, "the military judge should consider the following non-exhaustive factors:"

---

molestation" as "any conduct prohibited by Article 120 and committed with a child, or an attempt to engage in [said conduct] MIL. R. EVID. 414." AE XLVII at 3 n.5 (internal quotation marks omitted)

[15] AE XLVII at 3.

[16] *Id.* at 4.

(1) strength of proof of the prior act (*i.e.*, conviction versus gossip);

(2) probative weight of the evidence;

(3) potential for less prejudicial evidence;

(4) distraction of the factfinder;

(5) time needed for proof of the prior conduct;

(6) temporal proximity;

(7) frequency of the acts;

(8) presence or lack of intervening circumstances; and

(9) the relationship between the parties.

*Id.* at 180 (citing *Wright*, 53 M.J. at 482). This analysis of the MIL. R. EVID. 403 factors also encompasses the third prong of the *Reynolds* MIL. R. EVID. 404(b) test.

If the "balancing test requires exclusion of the evidence, the presumption of admissibility [that is inherent within MIL. R. EVID. 413] is overcome." *Berry*, 61 M.J. at 95 (citing *Wright*, 53 M.J. at 482-83). "When a military judge articulates his properly conducted [MIL. R. EVID.] 403 balancing test on the record, the decision will not be overturned absent a clear abuse of discretion." *Solomon*, 72 M.J. at 180 (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

a. Strength of proof of the prior act (i.e., conviction versus gossip)

In his written findings addressing the first *Wright* factor, the military judge held the members could find the offenses alleged by Alex and Pete occurred by a preponderance of the evidence and that their anticipated in-court testimony and sworn depositions were more than mere gossip. He acknowledged that the appellant was acquitted of the conduct at his first trial, that the boys were and would be subject to "stringent defense questioning during sworn depositions," would again be subject to cross-examination, and recognized that admission of this evidence was not barred by the prior acquittals.[17]

We agree. The preponderance of evidence standard in this factor is a much lower showing than the beyond a reasonable doubt standard considered by the members at the first trial. The trial judge carefully weighed the acquittals, the additional evidence provided on the motion, and the necessary crucible of cross-examination in the rehearing.

---

[17] AE XLVII at 4.

b. Probative weight of the evidence

In addressing the probative weight of the evidence, the military judge stated that the evidence was probative "not only to the accused's propensity to engage in this conduct, but also as to motive, intent, common scheme or plan, or absence of mistake" related to the MIL. R. EVID. 404(b) test.[18] He also noted it was important for the members so they would understand what the appellant meant by "a quickie" and how the appellant came to the attention of law enforcement.[19] Further, he concluded that the probative weight was heightened by the similarities to the charged offense. All three alleged victims were young boys approached by a man driving a silver or light colored SUV while walking home alone home from school. The driver solicited sexual acts using hand gestures and verbal comments while driving by them.

We agree with the military judge's assessment of the probative value of this evidence. The conduct during the three incidents was strikingly similar, making the evidence highly probative, but not unfairly prejudicial.[20] This type of evidence is exactly what MIL. R. EVID. 414 was intended to admit. Though uncharged misconduct at this trial, it also demonstrates permissible government theories of culpability. The members were informed of the prior acquittals and properly instructed on how to use the evidence for propensity and motive, intent or common scheme consideration.

 c. Potential for less prejudicial evidence; distraction of the factfinder; time needed for proof of the prior conduct

Like the first two *Wright* factors above, we agree with the military judge's conclusion that there was no less prejudicial evidence. Like the military judge, we find distraction to the factfinder and time needed to prove the prior conduct to be linked since the primary consideration for both was Alex's and Pete's testimony. The judge noted in his ruling that he was sensitive to overuse of evidence of the prior acquittals and would limit distraction through tailored examinations and limiting instructions. He followed through on this commitment at trial, ensuring a minimum amount of time was focused on propensity and providing limiting instructions during both the testimony and in his final instructions.

The unique facts of this case also properly allowed the prior acquittal evidence under MIL. R. EVID. 404(b). While the trial counsel did discuss the three boys in his opening statement and closing argument, his theme was

---

[18] *Id.*

[19] *Id.*

[20] *See United States v. Oakley*, No 201200299, 2015 CCA LEXIS 154, at *33-34 (N-M. Ct. Crim. App. 21 Apr 2015).

focused much more on opportunity, modus operandi, and pattern of the appellant's behavior given the similarities of the encounters rather than propensity. The appellant contends that this government emphasis was unfairly prejudicial, but his defense theory of misidentification actually made the pattern theme under MIL. R. EVID. 404(b) arguably more relevant to the members than the same information admitted as propensity evidence. The evidence did not inflame the members or cause confusion, rather it highlighted the three incidents for the members to consider along with the rest of the evidence.

d. Temporal proximity; frequency of the acts; presence or lack of intervening circumstances; relationship between the parties

Concerning these *Wright* factors, the military judge's written findings noted that Alex and Pete made allegations days apart and approximately five months after the charged misconduct. There were no intervening circumstances that would diminish the probative value of the evidence, and the parties were not related. The military judge concluded that these factors weighed in favor of admission.

Again, we agree. The temporal proximity is highly probative given their similarities but not unfairly so.

We find that the military judge properly conducted the MIL. R. EVID. 403 balancing test and neither erred nor abused his discretion by admitting the prior acquittals under either MIL. R. EVID. 414 or 404(b). His measured analysis on the record and in his written ruling was reasonable and not clearly erroneous. The similarities between the two incidents from the prior trial provided a strong nexus to the charged offenses, and the military judge exercised appropriate sensitivity to the acquittal evidence.[21] He ensured the members were aware of the acquittals in his instructions (over government objection) and limited questioning as appropriate to avoid undue delay and confusion of the members.

---

[21] *See United States v. Griggs*, 51 M.J. 418, 420 (C.A.A.F. 1999) (prior acquittal evidence is not per se barred as evidence of prior acts); *United States v. James*, 63 M.J. 217, 221 (C.A.A.F. 2006) (no temporal limitation on the admissibility of specific uncharged child molestation misconduct; it can be prior or subsequent to the charged acts as MIL. R. EVID. 414 evidence admissibility should be liberally construed); and *United States v. Morrison*, 52 M.J. 117, 122-23 (C.A.A.F. 1999) (where evidence is offered to show modus operandi, there must be a high degree of similarity between the extrinsic offense and the charged offense).

**B. Military judge's instructions**

The appellant next claims the military judge erred by failing to instruct the members that they were required to find the uncharged propensity misconduct occurred by a preponderance of the evidence. We disagree.

*1. The instruction*

The military judge relied in part on *United States v. Williams,* 75 M.J. 621 (A. Ct. Crim. App. 2016)[22] in determining that "the military judge does not have to instruct that the members find by preponderance of the evidence that the propensity evidence did or did not occur pursuant to [MIL. R. EVID.] 413 or 414[.]"[23] After informing defense counsel that he intended to use the defense's proposed limiting instruction except for that sentence, he asked if the defense agreed to the limiting instruction. The trial defense counsel replied:

> DC: With the one strike, yes, sir.
>
> MJ: No objections to any other aspect of it?
>
> DC: No, sir.[24]

Before their deliberations on findings, the military judge instructed the members concerning their use of the uncharged acquittal evidence. They could consider the uncharged sexual misconduct pursuant to MIL. R. EVID. 414, as evidence of the appellant's propensity to commit the charged sexual misconduct, and pursuant to MIL. R. EVID. 404(b), as evidence of the appellant's identity, motive or common scheme or plan:

> You heard evidence that the accused may have committed other offenses upon [Alex] and [Pete]. The accused is not charged with these other offenses and was previously acquitted of these offenses at a prior proceeding. You may, however, consider the evidence of those offenses involving [Alex] and [Pete] for its bearing on any matter to which it is relevant in relation to the charged offenses. You may consider the evidence related to [Alex] and [Pete] for its tendency, if any, to show the accused's propensity or predisposition to engage in similar offenses, as well as its tendency, if any, to establish among other possible things, identity, motive, or common scheme or

---

[22] The case was reversed and remanded in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F 2016) due to charged propensity misconduct which is not the issue in the present case. *United States v. Williams*, 75 M.J. 430 (C.A.A.F. 2016).

[23] Record at 490.

[24] *Id.* at 518.

plan. You may not, however, convict the accused solely because you believe he committed these other offenses, or solely because you believe the accused has a propensity or predisposition to engage in similar acts. In other words, you cannot use this evidence to overcome a failure of proof in the government's case, if you perceive any to exist.[25]

### 2. *The law*

"Whether a panel was properly instructed is a question of law we review de novo." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citation omitted). Whether an appellant has waived an issue is a question of law we review de novo. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted).

"Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citations and internal quotation marks omitted). When an appellant has "intentionally waive[d] a known right at trial, it is extinguished and may not be raised on appeal." *Id.* Forfeited objections to evidence are reviewed for plain error, which exists where: (1) an error was committed; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to substantial rights. *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007) (citing *United States v. Powell*, 49 M.J. 460, 463–65 (C.A.A.F. 1998)).

Here the appellant concedes he did not object to the instructions at trial but argues the plain error standard applies.[26] Assuming without deciding that the appellant forfeited, rather than waived, his right to object to the military judge's instructions, we find no error.

### 3. *Plain error analysis*

The appellant contends that the military judge's instructions should have contained the following language: "[t]his evidence may have no bearing on your deliberations *unless you first determine by a preponderance of the evidence, that is more likely than not, these uncharged offenses occurred.*"[27]

The military judge discussed the defense's request to specifically instruct the members regarding their determination of whether the uncharged

---

[25] *Id.* at 615.

[26] *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017).

[27] Appellant's Supplemental Brief of 16 Feb 2018 at 3 (emphasis added) (citing Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 at ¶ 7-13-1 (20 Mar 2015)).

propensity offenses occurred and by what standard. However, he believed procedurally the initial requirement had been fulfilled once he made the admissibility analysis under MIL. R. EVID. 414 and explained to the members that the appellant had been acquitted of those offenses.[28] Although he partially relied on *Williams*, he also compared the requested instruction to more traditional uncharged misconduct instructions under MIL. R. EVID. 404(b). He noted the members are generally permitted to give their own assignment of weight to uncharged MIL. R. EVID. 404(b) evidence once the judge has properly determined admissibility.

In post-*Hills* courts-martial, military judges no longer allow charged evidence to act as propensity evidence for other charged offenses.[29] While *Hills* focused on charged misconduct establishing propensity evidence for other charged misconduct—which is not the issue here—the instructions were found to be confusing in part due to similar language the appellant now suggests was missing in his case. We recognize that the charged propensity evidence at issue in *Hills* carried a much greater risk of muddled instructions than what the appellant proposed here regarding uncharged misconduct, but he offers no authority for his position that the military judge must instruct the members using the preponderance standard.[30]

Accordingly, we find that the military judge did not commit error, and certainly not plain or obvious error, when instructing the members on how to use the uncharged misconduct evidence as both uncharged misconduct and propensity evidence. Notably, after our superior court's decision in *Hills*, the Military Judge's Benchbook was revised and the language instructing the

---

[28] Record at 490, 522, 615.

[29] *Hills*, 75 M.J. at 357 ("Quite simply, we hold not only that charged offenses are not properly admitted under M.R.E. 413 to prove a propensity to commit the charged offenses, but also that the muddled accompanying instructions implicate 'fundamental conceptions of justice' under the Due Process Clause by creating the risk that the members would apply an impermissibly low standard of proof, undermining both 'the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt,' *Wright*, 53 M.J. at 481.")

[30] *United States v. Schroder*, 65 M.J. 49, 54, 56 (C.A.A.F. 2007) (finding the military judge is not "required to disaggregate the [414] instruction" and that a MIL. R. EVID. 414 instruction must state "the introduction of such propensity evidence does not relieve the government of its burden of proving every element of every offense charged. Moreover, the factfinder may not convict on the basis of propensity evidence alone"). We note both of these requirements were contained in the military judge's instructions here.

members to determine by "a preponderance of the evidence, that is more likely than not, these uncharged offenses occurred" was omitted.[31]

This revision brought the Benchbook instructions into alignment with those applicable in the Article III federal courts.[32] The military judge's instruction—over government objection—reminding the members that the appellant was acquitted of the uncharged misconduct/propensity evidence ensured that the members understood the rules of its use, the presumption of innocence on the charged offenses, and the requirement that the prosecution prove guilt beyond a reasonable doubt.[33] The appellant was charged with three offenses but convicted of two—which reinforces our belief that the members understood and properly followed the judge's instructions.

## C. Improper referral

In his third AOE, the appellant argues the military judge erred when he failed to preclude Col W, the staff judge advocate (SJA), from participation in areas of pretrial decision-making, and that such an error resulted in the improper referral of the appellant's charges to general court-martial. We disagree.

Article 34, UCMJ, and RULE FOR COURTS-MARTIAL (R.C.M.) 406 require the CA to submit all preferred charges to an SJA for "consideration and advice" before referring any charge to a general court-martial for trial. MCM, UNITED STATES (2012). Such pretrial advice must be provided in writing and signed by the SJA to enable the CA to proceed. R.C.M. 406(b).[34] Whether an individual is disqualified from acting as an SJA is a legal question reviewed *de novo. United States v. Stefan*, 69 M.J. 256, 258 (C.A.A.F. 2010).

---

[31] *See* Dept. of the Army Pamphlet 27-9 at 1105-1106 (10 Sep. 2014, 20 Mar. 2015, and Feb. 2018). This instruction is commonly referred to by practitioners as "7-13-1. Other Crimes, Wrongs, or Acts Evidence." Although the Benchbook is not legally binding, it does highlight military justice practitioners' commonly held beliefs on the state of the UCMJ.

[32] *Huddleston*, 485 U.S. at 690 (a trial court "simply examines all the evidence in that case and decides whether a jury could reasonably find the conditional fact . . . by a preponderance of the evidence").

[33] The appellant does not claim prejudice and we agree there is none.

[34] "The staff judge advocate is personally responsible for the pretrial advice and must make and independent and informed appraisal of the charges and evidence in order to render the advice. . . . [B]ut the staff judge advocate is, unless disqualified, responsible for it and must sign it personally. Grounds for disqualification in a case include previous action in that case a preliminary hearing officer, military judge, trial counsel, defense counsel, or member." R.C.M. 406(b) Discussion.

*1. Col W's role*

The facts underlying this claim and key to its resolution are undisputed.[35] In approximately July 2012, after the preferral of charges and Article 32 hearing for the appellant's first court-martial, Col W assumed the Regional Trial Counsel (RTC) billet at the Legal Services Support Section East (LSSS-E). In this capacity, Col W "oversaw all prosecutions within the geographic region encompassing Camp Lejeune,"[36] and was delegated detailing authority over the trial counsel stationed within the region.

While Col W was serving as RTC, Major (Maj) L requested to be detailed to the appellant's first court-martial to assist with pretrial motions. Col W granted his request, detailing Maj L to join, but not supplant, the acting trial counsel originally detailed by the senior trial counsel. Beyond this one instance, "[n]either Col [W][,] nor any other member of the prosecution recall the extent that [he] personally participated in the prosecution of the [appellant's] case (if at all)."[37] Col W completed his roughly eight-month RTC tour shortly thereafter—months before the appellant's first trial began.[38]

However, that did not mark the end of his involvement with the appellant's case. When our superior court later authorized a rehearing on the charges involving Ryan, Col W was the SJA for the General Court-Martial Convening Authority. On 3 May 2016, Col W prepared an Article 34, UCMJ, pretrial advice letter regarding the appellant's rehearing. Consistent with Col W's recommendation, the CA referred the charges to a general court-martial.

*2. The military judge's ruling*

On 8 September 2016, the appellant filed a motion claiming improper referral of charges, asserting that Col W was disqualified from acting as SJA due to his previous role as RTC during the appellant's first court-martial.

The military judge granted the motion in part in a thorough written ruling. First, he concluded "in the exercise of an abundance of caution, that [Col W] was disqualified from providing the pretrial advice" for the

---

[35] In his written ruling on Col W's disqualification, the military judge adopted the findings of fact from both defense counsel's motion and government counsel's response. AE XLII at 1, n.1 ("To the extent that a factual dispute exists between the two documents[,] the Court finds that this dispute is inconsequential to the resolution of this issue.").

[36] *Id.* This region included Camp Lejeune, Marine Corps Air Station Cherry Point, and Marine Corps Recruiting Depot Parris Island.

[37] *Id.*

[38] AE XXXIII at 2 ("[H]e ceased being the RTC on 14 March 2013" and the first court-martial "was conducted in August 2013").

appellant's rehearing.[39] He noted that although it was unclear "whether he performed the duties of a trial counsel while fulfilling his role as RTC[,]" the billet itself "implies that he played some role sufficient to make disqualification appropriate."[40] Specifically, the military judge surmised that Col W "likely remained cognizant of trial strategy" given his direct supervisory responsibility, the close physical proximity to the trial counsel, the severity of the charges, and the discretion exercised in detailing Maj L.[41]

Second, the military judge denied the appellant's request to dismiss the charges. Instead, he ordered the provision of new Article 34, UCMJ, advice, concluding it was "only necessary for a qualified SJA to provide the appropriate pretrial advice, and for the [CA] to affirm whether he desires to adhere to his previous decision to refer the charges."[42] In so doing, the military judge relied on *United States v. Loving*, 41 M.J. 213, 288 (C.A.A.F. 1994), which held that factual errors in an Article 34, UCMJ, letter are not jurisdictional and therefore may be cured through supplemental advice without re-referral.

As directed by the military judge, an uninvolved, qualified SJA prepared a new Article 34 advice letter. This second advisement entailed the same conclusions on the sufficiency of the charges, evidence, and jurisdiction, with the same recommendation. Armed with this new Article 34 advice, the CA reaffirmed his original decision referring the charges to general court-martial.

### 3. Disqualification of the SJA

On appeal, the appellant argues that the charges should have been dismissed as a result of Col W's narrow disqualification and likely pretrial involvement prior to the provision Article 34 advice—decisions to retry the case and to continue pretrial confinement.[43] The government opposes, arguing the provision of new Article 34, UCMJ, advice prepared by a different judge advocate remedied any potential prejudice.

In *United States v. Hardin*, 7 M.J. 399, 405 (C.M.A. 1979) the issue was "whether the mere fact that government counsel at the pretrial investigation participated in the preparation of this otherwise sound pretrial advice

---

[39] AE XLII at 2.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] The appellant makes this argument, but provides no evidence of Col W's involvement in these two areas. Appellant's Brief of 18 Sep 2017 at 32.

requires automatic reversal of the appellant's conviction." The court answered in the negative, finding that the predecessor to the R.C.M. 406 Discussion, ¶ 35b,[44] was "not a codal proscription and accordingly, if error, it can hardly be considered anything but ordinary." *Id.*

Instead, *Hardin* endorsed a more pragmatic approach, recognizing that to "find no error in the contents of the pretrial advice but per se error in the one who writes it is perception for perception's sake alone." *Id.* at 404. Thus, "[t]he advice must be tested for legal competence and accuracy as well as the possibility . . . that the [CA] might have been misled in his prosecutorial decision as a result of some bias in the advice stemming from the [SJA's] prior involvement in the case." *Id.* at 405. In other words, "it is the lawfulness of their prosecutorial conduct performed in a professional manner which must be tested under Article 34, and not their functional inclinations at this [pretrial] stage of the proceedings." *Id.* at 404.

This approach recognizes that the SJA's pretrial advice is "primarily [a] prosecutorial codal tool." *Id.* at 403. As such, the SJA shall not be elevated "to a state of absolute impartiality required in the strict sense for a trial judge," but rather acts properly like a prosecutor when "advis[ing] the referral authority whether he may legally proceed if he so desires." *Id.* at 403-04

### 4. Prejudice

The military judge's ruling remedied any deficiency—real or perceived—resulting in no prejudice to the appellant.[45]

Here, the CA's decision to order a rehearing did not constitute "ill-considered action," nor were the referred charges regarding Ryan "ordered to trial due to inadvertence or mistake." *United States v. Smith*, 33 C.M.R. 85, 89 (C.M.A. 1963) (citations omitted). As part of his written ruling, the military judge ordered a qualified SJA to provide fresh pretrial advice for the CA to then affirm or revoke his referral decision via written memorandum. One week later, Maj Z provided just that, and the CA affirmed his decision to refer.

Even proven errors in pretrial advice, whether found within the four corners of the Article 34, UCMJ, advice or in the status of the author, may be

---

[44] Paragraph 35b, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1969) (Revised Edition) ("No person who has acted as investigating officer, military judge, or member of the court, prosecution, or defense in any case may later act as staff judge advocate or legal officer in the same case.").

[45] Notably, the appellant does not allege prejudice and we find no material prejudice to the appellant's substantial rights.

cured through supplemental advice.[46] Likewise, it would defy all notions of judicial efficiency to mandate the per se withdrawal of charges without a minimal showing of prejudice. Undoubtedly, the very purpose in requiring the parties at trial to move for appropriate relief based on defects in Article 34, UCMJ, advice before the entry of pleas[47] is "to prevent otherwise correct trials from being vitiated by defects in ancillary proceedings." *United States v. Klawuhn*, 33 M.J. 941, 943 (N.M.C.M.R. 1991). Thus, we agree with the military judge that the charges were properly referred and need not have been withdrawn or dismissed.

After reviewing the record, we conclude that Article 34, UCMJ, advice was provided by Maj Z to the CA before the appellant's charges were again referred to general court-martial. Therefore, there is neither improper referral nor prejudice to the appellant.

## D. Military judge recusal

The appellant's fourth claimed error focuses on a past position held by the military judge before presiding over the rehearing. Specifically, the appellant argues that in light of his former role as the Officer-in-Charge (OIC) of the LSSS during the investigation stage of the appellant's first court-martial, the military judge "should have recused himself and avoided any appearance of conflict."[48] We disagree.

We review a military judge's decision not to recuse himself for an abuse of discretion. *United States v. McIlwain*, 66 M.J. 312, 314 (C.A.A.F. 2008) (citing *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001)). "'An accused has a constitutional right to an impartial judge.'" *Butcher*, 56 M.J. 90 (quoting *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999)). "There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle[.]" *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001). Accordingly, the "moving party has the burden of

---

[46] *See, e.g.*, *Loving*, 41 M.J. at 288 ("We hold that the factual errors in the original pretrial advice were not jurisdictional, were corrected by the supplemental advice, and were not prejudicial to appellant."); *United States v. Gebert*, No. 201500381, 2016 CCA LEXIS 662, at *19-22 n.47, unpublished op. (N-M. Ct. Crim. App., 15 Nov 2016) ("We also find no support for the appellant's assertion that the originally defective Article 34, UCMJ, advice in some way "baked" prejudice into the process that wasn't remedied by the issuance of new advice"), *rev. denied*, 76 M.J. 172 (C.A.A.F. 2017).

[47] R.C.M. 905(b)(1) requires "objections based on defects (other than jurisdictional defects) in the . . . referral of charges" to be raised before a plea is entered, and R.C.M. 905(b)(1), Discussion explicitly states that such a defect includes "inadequate pretrial advice."

[48] Appellant's Brief at 39.

establishing a reasonable factual basis for disqualification. More than a mere surmise or conjecture is required." *Wilson v. Ouellette*, 34 M.J. 798, 799 (N.M.C.M.R. 1991) (citing *Untied States v. Allen*, 31 M.J. 572, 601 (N.M.C.M.R. 1990), *aff'd*, 33 M.J. 209 (C.M.A. 1991)).

Disqualification of a military judge may occur for either the appearance of bias or actual bias. R.C.M. 902(a) and (b). "The appearance standard is designed to enhance public confidence in the integrity of the judicial system." *Quintanilla*, 56 M.J. at 45 (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988)). "Th[is] rule also serves to reassure the parties as to the fairness of the proceedings[.]" *Id.*

### 1. *The military judge's ruling*

At an Article 39(a), UCMJ, session during appellant's second trial, defense counsel conducted *voir dire* of the military judge. The military judge acknowledged that he had served as the LSSS OIC from October 2010 through May 2012, before the appellant's charges were preferred in mid-May 2012. In this capacity, he supervised the trial and defense sections, among several others. As part of his supervisory responsibilities, the military judge also served as the reporting senior for the Military Justice Officer (MOJO) and was copied on all of the MOJO's ongoing NCIS investigations. The MOJO at the time "was delegated authority to detail cases[,] generally oversaw the prosecutorial function at the LSSS. . . . and would periodically brief [the OIC] on important cases that he or others were working on[.]"[49] After eliciting this information from the military judge, the trial defense counsel verbally requested that he disqualify himself under R.C.M. 902(a).

The military judge denied the defense's motion after having "thought hard" about his previous role because he had "absolutely no recollection of participating in any aspect of the investigation, pre-preferral process, or preferral of the charges in this case."[50]

Unsatisfied, the trial defense counsel filed a written motion for reconsideration. After considering this motion, the government's response, the additional *voir dire* by trial counsel, and the oral arguments of both parties, the military judge again declined to recuse himself, making findings of fact and conclusions of law regarding his impartiality in an even more thorough verbal ruling. The military judge found the "fact that NCIS includes 'OIC/LSSS' on the distribution list for their reports of investigation has little significance, as [he] certainly [does] not recall receiving copies" of every single

---

[49] Record at 99.

[50] *Id.* at 15-16.

one during his tenure.[51] The military judge also reemphasized that neither he nor the MOJO "can recall ever discussing this matter back in 2011 or 2012, and to speculate as to whether [they] did talk about it over four years ago would be pure conjecture."[52]

### 2. Appearance of bias

The appellant raises solely the appearance of bias in his appeal. That test under R.C.M. 902(a) is an objective standard concerning whether there was "'[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned.'" *Butcher*, 56 M.J. at 91 (quoting *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982)) (internal quotation marks omitted). While performing this test, we consider the facts and circumstances through an objective lens: "not in the mind of the military judge himself, but rather in the mind of a reasonable man . . . who has knowledge of all the facts." *Wright*, 52 M.J. at 141 (citations and internal quotation marks omitted). Thus, the "judge's statements concerning his intentions and the matters upon which he will rely are not irrelevant to the inquiry." *Id.* (citations omitted)

On appeal, the appellant remains unable to provide any meaningful evidence to support his assertion that the military judge exuded the appearance of bias in order to elevate his claim above conjecture. The appellant's brief is an almost verbatim reiteration of the challenge at trial[53] and does not reveal any new facts that would suggest a lack of impartiality. The appellant provides no evidence, relying instead on conclusory statements that the possibility of the military judge's awareness of the facts of the case creates an apparent bias.[54]

There is simply no evidence that the military judge was biased or had the appearance of bias; he was firm but fair to both sides. The full record discloses that the military judge applied the law correctly and even-handedly. We find that the "court-martial's legality, fairness, and impartiality" were not put into doubt. *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (citations and internal quotation marks omitted).

Based on our review of the record and in light of the actions taken by the military judge, we find that no reasonable observer, seized of the pertinent

---

[51] *Id.* at 100.

[52] *Id.* at 99.

[53] Appellant's Brief at 34-39*;* Appellate Exhibit XXVII at 1-5.

[54] Record at 93-94 ("it is not an unreasonable stretch to believe that the military judge was certainly aware of the case" because "it is possible that there was a general discussion of the facts" and "the reality is that the optics here just aren't good").

facts, could reasonably question the military judge's impartiality. We therefore hold that the military judge did not abuse his discretion in denying the appellant's recusal motion. We further conclude that a reasonable person observing this court-martial would have full confidence in the judicial process.

**E. Sentence disparity and severity**

In his final AOE, the appellant argues that his sentence is "inappropriate and highly disparate from a closely related" Army case with an "extremely similar fact pattern," which entitles him to relief.[55] Because he has since completed his confinement, he asks this court to set aside his dishonorable discharge.[56] We decline to do so.

*1. Sentence disparity*

A narrow exception to the general principle of non-comparison regarding sentences exists "'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). When requesting relief by way of this exception, an appellant's burden is twofold: the appellant must demonstrate "that any cited cases are 'closely related' to his or her case and that the resulting sentences are 'highly disparate.'" *Id.* Only if the appellant succeeds on both prongs will the burden shift to the government to "show that there is a rational basis for the disparity." *Id.*

First, for cases to qualify as closely related, "the cases must involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994). "This threshold requirement can be satisfied by evidence of "co[-]actors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared[.]" *United States v. Pena*, No. 201700327, 2018 CCA LEXIS 279, at *4 (N-M. Ct. Crim. App. 5 Jun 2018) (quoting *Lacy*, 50 M.J. at 288-89 (finding cases qualified as closely related "where appellant and two other Marines engaged in the same course of conduct with the same victim in each other's presence")); *United States v. Williams*, No. 201600197, 2017 CCA LEXIS 702, at *8, unpublished op. (N-M. Ct. Crim. App. 16 Nov 2017) (finding cases did not qualify as closely related where "the appellant's offenses and those committed by the other five Marine

---

[55] Appellant's Brief at 40, 44.

[56] The case cited for sentence comparison resulted in a bad-conduct discharge and the appellant is requesting that we set aside his dishonorable discharge.

E-8s took place at different times, at different commands, in different parts of the world, and involved unrelated women under differing factual circumstances").

Second, when assessing disparity among sentences, we look only to adjudged sentences, rather than those approved or bargained for in a pre or post-trial agreement: "[a]djudged sentences are used because there are several intervening and independent factors between trial and appeal—including discretionary grants of clemency and limits from pretrial agreements—that might properly create the disparity[.]" *United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010). Accordingly, we "refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement or a CA's lawful exercise of his authority to grant clemency to an appellant." *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, at *7, unpublished op. (N-M. Ct. Crim. App. 22 Mar 2016) (citations omitted).

Here, the appellant requests we compare his sentence to one other sentence awarded in *United States v. Rodriquez*, No. 20130577, 2015 CCA LEXIS 551, unpublished op. (A. Ct. Crim. App. 1 Dec 2015). In *Rodriquez*, an Army specialist "followed minor girls walking on post in his car, and then approached them and talked to them." *Id.* at *3. He received a sentence of a bad-conduct discharge, confinement for two years, and reduction to pay grade of E-1 for his offenses, which included one specification of sexual abuse of a child by committing a lewd act.[57]

We find the appellant has failed to carry his preliminary burden to show this cited case is closely related to his own. His analogy is insufficient—the two offenders were not co-conspirators, involved in a common criminal scheme, pursuing a shared victim, or otherwise acting in concert to establish the prerequisite "direct nexus" with one another. Rather, the two men are from different branches of service, different coasts, and were charged under different versions of Article 120, UCMJ. Whether cases are closely related is a legal question that cannot be satisfied by some semblance of factual similarity between two independent actors. *See United States v. Durant*, 55 M.J. 258, 262 (C.A.A.F. 2001).

---

[57] The appellant in *Rodriquez* was convicted of "one specification of failing to obey a lawful order, one specification of sexual abuse of a child by committing a lewd act, and six specifications of wrongfully annoying and molesting a minor in violation of California Penal Code § 647.6(a)(1), in violation of Articles 92, 120b, and 134," UCMJ, 10 U.S.C. §§ 892, 920b, and 934 (2012). *Id.* at *1-2. The Army Court of Criminal Appeals set aside the specifications charged under the California Penal Code as preempted by Article 120(b), UCMJ, and reassessed the sentence. *Id.* at *7-8.

Assuming the appellant's case was closely related to *Rodriquez*, he also fails to satisfy the second prong of the test of proving a wide disparity between the two adjudged sentences "that are unsupported by good and cogent reasons." *Kelly*, 40 M.J. at 570. The appellant overlooks the procedural history in *Rodriquez*, specifically the key factor that Rodriquez had negotiated a pretrial agreement and pled guilty to all offenses with a military judge; whereas the appellant pled not guilty and was sentenced by members. Because "pretrial agreements involve highly subjective processes which this court is ill-equipped to second guess[,]" we must refrain questioning the disparity alleged here. *Widak*, 2016 CCA LEXIS 172, at *7.

Thus, the appellant has not sustained either part of his dual burden of showing a closely related case with an adjudged sentence to warrant comparison. Plainly, "[t]he mere similarity of offenses is not sufficient." *United States v. Washington*, 57 M.J. 394, 401 (C.A.A.F. 2002) (citation omitted). We are not convinced that the appellant suffered a miscarriage of justice solely because another offender took advantage of the benefits and relief of a pretrial agreement by accepting full responsibility for his actions, while the appellant declined to do so.

*2. Sentence severity*

Having found the appellant's request for comparison unpersuasive, we now evaluate the appellant's sentence on its own facts as part of our due diligence under Article 66(c), UCMJ. *See United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005).[58] We review issues of sentence appropriateness *de novo*. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires our "individualized consideration of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)). In making this assessment, we analyze the record as a whole. *Healy*, 26 M.J. at 395. Notwithstanding our significant discretion for determining appropriateness, we must remain mindful that we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

---

[58] *See also United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) ("However proper it may be for the [CA] and [Courts of Criminal Appeals] to consider sentence comparison as an aspect of sentence appropriateness, it is only one of the many aspects of that consideration") (citations omitted).

Looking to his offenses, our superior court has recognized that "taking indecent liberties [with a child] is the first step toward more serious sex crimes of a perverted nature[.]" *United States v. Brown*, 13 C.M.R. 10 (C.M.A. 1953). Here, the appellant targeted young and vulnerable children for his indecent communications with the hope that his words would lead to more. His two convictions involving Ryan demonstrate a calculated attempt to entice a teenage boy to engage in oral sexual acts without regard for the impact on his impressionable victim. He repeatedly circled around the block, unwilling to accept Ryan's refusal to participate until Ryan ran home to prevent a possible fifth drive-by. Despite these actions, he remained largely unremorseful throughout his unsworn statement, making a general apology[59] and claim that he had "changed from [his] experiences."[60]

The appellant faced the possibility of 35 years' confinement and a dishonorable discharge. Given the circumstances of his offenses, we find that the approved 7 years' confinement is within the bounds of reason. Regarding the dishonorable discharge, the appellant's actions severely compromised his standing as a member of society and the armed forces. We too are satisfied that these offenses warrant the severe punishment that such a discharge represents.

Having given our individualized consideration of the appellant, the appellant's record of service, the nature and seriousness of the offenses, and all other matters contained in the record of trial, we find the sentence to be appropriate for this offender and his offenses. Granting sentence relief at this point would be to engage in clemency, and we decline to do so. *Healy*, 26 M.J. at 395-96.[61]

---

[59] The appellant said, "I would like to apologize for any mistakes I've made, any pain I have caused." Record at 672. Otherwise, he did not express any other signs/words of remorse or concern for his child victim.

[60] *Id.* at 674.

[61] We note that here the CA in this case was not constrained in his clemency consideration. Because the appellant's offenses occurred in 2011, the CA was vested with full Article 60, UCMJ, authority to "modify or dismiss charges and modify the sentence." *United States v. Perez*, 66 M.J. 164, 165 (C.A.A.F. 2008) (per curiam). The CA declined to exercise this unfettered authority and instead approved the sentence authorized by the law. Although the appellant was sentenced to 10 years' confinement on rehearing, he was sentenced to 7 years' confinement at his first court-martial and therefore the CA properly approved the 7 vice 10 years' confinement.

### III. CONCLUSION

The findings and sentence are affirmed.

Senior Judge HUTCHISON and Judge SAYEGH concur.

For the Court

R.H. TROIDL
Clerk of Court